Norma KLOBUCHAR, Appellant,

v.

PURDUE UNIVERSITY, Appellee.

No. 56A04–8907–CV–314.

Court of Appeals of Indiana,
Fourth District.

April 24, 1990.

Sherman and Allegretti, Hammond, for appellant.

Kenneth E. Nowak, Whitted and Buoscio, Merrillville, for appellee.

MILLER, Judge.

Norma Klobuchar appeals the trial court's grant of summary judgment in favor of Purdue University. Norma filed a lawsuit against the University, with a jury demand, seeking damage for injuries she received while a student at the University's Hammond campus. She alleged that, while she was in class, her estranged husband entered her car with an auto theft device. When she returned to her car, he forced her at gunpoint to drive off the campus. Ultimately, he assaulted her, shot her five times, and then committed suicide. Norma claimed her injuries were proximately caused by the University's failure to provide adequate security for the school's parking lots. The University filed its Motion for Summary Judgment which was granted by the court. Norma presents the following issues for review:

1. Whether the University owed Norma, a student, a duty to protect her from criminal assault of a third person; and

2. Whether the University is immune under the Indiana Tort Claims Act, IND. CODE § 34–4–16.5–3.

We affirm.

### FACTS

In April 1985, Norma (then 24 years old) was a part-time student at Purdue University at Hammond, Indiana. She had recently separated from her husband David Klobuchar. On April 10, 1985, Norma had numerous telephone conversations with David during the day. He had recently been served with a restraining order in the divorce proceedings and wanted to talk with her about it. Although he was upset about the restraining order, he was not belligerent. Norma went to the University for her 5:30 P.M. math class, parking her car in the school parking lot in front of the building where her class was located. The parking lot was a "permit lot"—parking was allowed only if the vehicle exhibited a parking ticket hung on the rearview mirror. Vehicles in the lot were routinely checked for permits by the campus police and a vehicle without a permit would be given a parking violation citation.

After class she returned to her car. It was still light. She unlocked her car, put her books down, started the car, turned on the radio and put the car in reverse. While looking in the rearview mirror, she heard a rustling noise and saw her husband who had been hiding under some covering. David pointed a gun at her and told her not to do anything to draw attention or he would blow her head off. She proceeded to drive out of the lot and traveled one or two blocks and off the Purdue campus. She became frightened, applied the brakes, opened the car door and tried to run away. David ran after her and struck her on the head with the gun. He then picked her up, threw her in the back of the car and drove away. Hammond police were alerted by witnesses and soon began following Norma's car. During the drive, David told her his intentions were to kill them both because he did not want the divorce. When Norma saw the police, she jumped to the back seat of the car, started to scream, and signaled the police. The police turned on the emergency lights of the squad car which apparently agitated David. He stopped the car, shot Norma five times with his .44 Magnum handgun, then fired the sixth round into his own head, killing himself. Norma was seriously injured by the gunshots.

In April of 1985 the police staff of Purdue University consisted of a chief, a patrol sargeant and five patrolmen. Normally, there would have been two patrolmen on duty, one in a patrol car and one on foot. Purdue Police Officer Hillier testified in her deposition that there were two persons on duty the evening of April 10, which contradicted her earlier statements to the Hammond police that there was only one person on duty. There were no extracurricular activities or sporting events scheduled on campus that evening. There was nothing unusual about the crowds or number of students in the area.

## DECISION

The standard of appellate review of summary judgment is the same one used by the trial court. A motion for summary judgment may be sustained where the pleadings and other matters filed with the court reveal no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Swanson v. Wabash College* (1987), Ind.App., 504 N.E.2d 327. All evidence is construed in favor of the nonmoving party and all doubts are resolved against the moving party. *Craig v. Whiteford Nationalease, Inc.* (1989), Ind.App., 538 N.E.2d 283.

■ Norma contends that the University's Motion for Summary Judgment was based on two theories:

(1) The University did not owe Norma a general duty to protect her from the criminal assault of a third person; and

(2) her claim against the University was barred by the Indiana Tort Claims Act (the ITCA).

She asserts that there were no facts presented in the pleadings or discovery which would entitle the University to summary judgment as to the first theory. She also asserts that recent case law suggests the University is not protected by the ITCA. She further contends summary judgment is inappropriate in negligence actions because the issues of negligence, contributory negligence, causation and reasonable care are for the trier of fact to determine. *Jackson v. Warrum* (1989), Ind. App., 535 N.E.2d 1207. However, it is for the court to first determine "whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff." *Swanson, supra; Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280. A general duty versus a special duty is a matter of law for the court to decide. *Doe v. Hendricks* (1979), N.M.Ct.App., 92 N.M. 499, 590 P.2d 647; *Crouch v. Hall* (1980), Ind.App., 406 N.E.2d 303. We agree with the University that if the court determined that there was no contested issue of material fact giving rise to a special or private duty, then summary judgment is appropriate.

■ Norma concedes the University is a governmental entity, but argues the University owes her a special duty to protect her from the criminal acts of a third party—in this case her husband—because she is a student. Our supreme court has imposed a duty upon school authorities to exercise reasonable care for the safety and supervision of *children*. *Miller v. Griesel* (1974), 261 Ind. 604, 612, 308 N.E.2d 701, 706. However, schools are not intended to be insurers of the safety of their pupils, neither are they strictly liable to them for any injuries they may incur. *Id.* at 612, 308 N.E.2d at 706. College students are not children and colleges "are not expected to assume a role anything akin to *in loco parentis* or a general insurer." *Campbell v. Board of Trustees of Wabash College* (1986), Ind.App., 495 N.E.2d 227, 232; *Swanson, supra.* Our court has also held that:

[c]ivil liability of a governmental unit may not be predicated upon a duty owed to the public generally, but only upon a private duty which must be *particularized* as to an individual. *Simpson's Food Fair, Inc. v. City of Evansville* (1971), 149 Ind.App. 387, 272 N.E.2d 871; *Crouch v. Hall* (1980), Ind.App., 406 N.E.2d 303.

*State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216 (Emphasis added). We agree with the University that the duty owed to Norma was the same general duty afforded the public, in this case the student body. This duty arises out of the law enforcement function of the school in policing the parking areas. Norma admits that neither she, nor anyone else, told the University that her husband might be a threat to her. She herself had no fear of her husband until she saw him in the car with the gun. She knew nothing that would have alerted the University to anticipate his violent attack on her.

Norma suggests cases in other jurisdictions support her position that the University is under a duty to protect her from the criminal acts of a third person. She cites

*Mullins v. Pine Manor College* (1983), 389 Mass. 47, 449 N.E.2d 331, where a eighteen (18) year old female student was attacked in the school's dormitory. The Massachusetts Supreme Court affirmed the jury verdict holding that the college had a duty to provide security for its students. The Massachusetts court also held that a duty voluntarily assumed must be performed with due care. *Mullins* is, however, distinguishable from the present case in that (1) Pine Manor College was a private school, not a state institution; (2) the student was attacked in a dormitory, not abducted from a parking lot in daylight; and (3) the student was attacked by a stranger, not her own husband. Furthermore, there was a vigorous dissent in the Massachusetts case.

A more analogous case to the present one is *Peterson v. San Francisco Community College District* (1984), 205 Cal.Rptr. 842, 36 Cal.3d 799, 685 P.2d 1193, where a college student was attacked on a stairway in a parking lot by an unknown person who had been hiding in foilage adjacent to the stairway. The student, as here, had been issued a parking permit for a fee. The trial court dismissed the student's suit against the college. On appeal, the California Supreme Court held that the college had a duty to exercise reasonable care to protect students from reasonably foreseeable assaults on campus, but the college was immune from liability for failure to provide adequate police protection under a governmental tort immunity statute.[1] However, a second cause of action was allowed under a theory that the college had a duty to warn students of *known dangers* and the college could be held liable for dangerous conditions the college created—the failure to trim the foilage around the parking lot stairway where the attack occurred. In that case, there had been similar attacks at the same stairway and the college was aware other assaults had occurred. The college had taken steps to protect students and the student claimed she had relied upon the increased protection. In the present case, there were no facts presented that the University had knowledge of previous attacks on students in the parking lot or that the University had created a dangerous condition.[2] Norma has only claimed the security provided by the University was insufficient.

■ Norma further contends that the University could not be entitled to immunity because recent Indiana case law suggests the University is not covered by the ITCA. We disagree. Under the ITCA, a governmental entity and its employees are provided immunity in specific enumerated situations. *Peavler v. Board of Commissioners of Monroe County* (1988), Ind., 528 N.E.2d 40. "When specific statutory immunities apply they shield the government from any general theory of negligence." *Holiday Rambler Corp. v. Gessinger* (1989), Ind.App., 541 N.E.2d 559, 563. The portion of the ITCA, relevant to the present case, provides:

§ 34-4-16.5-3. *Immunity from liability.*—A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

... (6) The performance of a discretionary function;

(7) The adoption and enforcement of or *failure to adopt or enforce a law (including rules and regulations),* un-

---

1. California's Tort Claims Act, Gov.Code § 810 *et seq.;* § 845 (public entity not liable for "failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.")

2. *See also, Bearman v. University of Notre Dame* (1983), Ind.App., 453 N.E.2d 1196, where a woman was injured in the university parking lot when a drunken football fan stumbled into her causing her to fall. This court held that Notre Dame—a private university—was under a duty to take reasonable precautions to protect those who attend football games from injury caused by the acts of third persons when the university was aware alcoholic beverages were consumed. The case was decided on the basis that an operator of a place of public entertainment owes a duty to keep the place safe for its invitees. The court cited The Restatement of Torts (Second) § 344 (1965)(f) which provides in part: "Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or about to occur...." *Id.* at 1198.

less the act of enforcement constitutes false arrest or false imprisonment; . . . (9) The act or omission of someone other than the governmental entity employee; . . . .

(Emphasis added).

Norma's injuries resulted from the direct action of her husband. There were no allegations or facts to show her husband was an employee of the University or that he had any relationship to the University at all. The statute on its face prevents a finding of liability against the University. However, Norma argues the acts of omission enabling her husband to gain access to her car (and later assault her) were the result of the University's failure to provide adequate security for the parking lots and protection for its students. Norma cites *Maroon v. State Department of Mental Health* (1980), Ind.App., 411 N.E.2d 404, where the parents of an Illinois minor, who was kidnapped and killed in Illinois by an escapee from the Indiana Department of Mental Health and the Department of Corrections, brought an action against the State of Indiana for wrongful death. The State alleged, among other things, that it owed no duty to protect the decedent against criminal attacks of third persons and that it was immune from loss resulting from an act of someone *other* than a governmental employee. The Court denied that argument; however, we do not find that case controlling because the person who caused harm to the victim in *Maroon* was in the care, custody and control of the Indiana Department of Mental Health, whose negligence permitted the prisoner to escape and cause the harm. The Department of Mental Health had a special duty to the victim arising out of the special relationship with its prisoner. In the present case, there was no special connec-

tion between the University and Norma's husband which could cause the University to be responsible for his conduct.[3]

A governmental entity and its employees are also granted immunity for the adoption and enforcement of or *failure* to adopt or *enforce* a law (including rules and regulations). In this case, the University is given the authority to provide campus security by statute I.C. § 20–12–3.5–1 *et seq.* The decision to provide security or to patrol the parking lot for permit violators is a decision on whether or not to enforce the law. Our courts have consistently held that the police duty is one owed to the general public, and does not give cause to an individual cause of action. Neither a police officer nor a governmental unit is liable for failure to enforce a law. *Sports, Inc. v. Gilbert* (1982), Ind.App., 431 N.E.2d 534. The failure of a governmental entity to provide for the safety of patrons or others on its property does not create a viable claim in favor of a plaintiff who is injured as a result of a failure to provide or enforce safety measures. *State Department of Natural Resources v. Morgan* (1982), Ind.App., 432 N.E.2d 59. *Cain v. Board of Commissioners of Cass County* (1986), Ind.App., 491 N.E.2d 544. As we noted in *State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216:

> The language of the Tort Claims Act is clear. The State of Indiana and its employees are not liable for losses resulting from the enforcement of or *failure* to *enforce a law*, unless enforcement constitutes false arrest or false imprisonment. *Seymour National Bank v. State* (1981), Ind., 428 N.E.2d 203 (opinion on rehearing).

*Id.* at 1220. (emphasis added).

We find this language of the ITCA clearly applies to the present situation and none

---

**3.** Norma also cites *Borne v. Northwest Allen County School Corporation* (1989), Ind.App., 532 N.E.2d 1196, where a special education student was sexually abused by her classmates during a school field trip outing. The trial court granted summary judgment for the school corporation on the grounds the school corporation was immune from liability for professional judgment of the special education teacher concerning the degree of supervision required by these students. The Court of Appeals reversed because

the school had been aware of previous instances of sexual contact between the students and should have taken steps to protect its reoccurrence. The *Borne* case on its facts is distinguishable from the present case. Here, the University had no knowledge of Norma's husband's problems and the supervision and protection necessary for special education students is clearly different from the protection needed by a college student.

of the cases that Norma cites convince us otherwise. Therefore, under these facts, we hold Norma's relationship to the University as a student did not give rise to a special duty to protect her from the criminal acts of her husband and that the University was immune under the ITCA. The trial court did not err in granting the University's Motion for Summary Judgment and we, therefore, affirm.

CHEZEM, P.J., and ROBERTSON, J., concur.