**AMERICAN LEGION PIONEER POST NO. 340, and Clifford Stephens, an Individual, and Clifford Stephens d/b/a Secure Detective and Security Agency and Secure Detective and Security Agency, Appellants–Defendants,**

v.

**Jason CHRISTON, Appellee–Plaintiff.**

**No. 84A01–9803–CV–109.**

Court of Appeals of Indiana.

May 28, 1999.

Keith M. Wallace, David L. Jones, Jones & Wallace, Evansville, Indiana, Attorneys for American Legion Pioneer Post. No. 340.

Andrew P. Wirick, Hume Smith Geddes Green & Simmons, Indianapolis, Indiana, Attorney for Clifford Stephens and Secure Detective and Security Agency.

Christopher J. Dailey, Terre Haute, Indiana, Randy A. Godshalk, Gary, Indiana, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge

American Legion Pioneer Post No. 340 ("American Legion") and Clifford Stephens d/b/a Secure Detective and Security Agency ("Secure Detective") appeal the denial of their respective motions for summary judg-

ment filed in response to Jason Christon's action for damages resulting from the appellants' alleged negligence. American Legion raises two issues which we restate as:

(1) whether it owed Christon either a pre-existing duty to protect him from the criminal acts of a third party while in its building; and,

(2) whether it assumed a duty to protect him from the criminal acts of a third party while in its building.

Secure Detective raises two issues which we consolidate and restate as whether it assumed a duty to protect Christon from the criminal acts of a third party while providing security services for American Legion. We affirm in part and reverse in part.

The facts most favorable to the nonmovant follow. American Legion rented a portion of its building to Alpha Kappa Alpha ("AKA"), a sorority at Indiana State University, for the evening of December 12, 1992. On that evening, AKA held a party in American Legion's building attended by Christon and a couple of friends. At some point, gunshots were fired inside the room where the party was being held. A short time later, Christon heard more gunshots and dove to the floor. As he did so, his "whole left arm just went numb and [he] just laid there." Record, p. 288. He then felt a bullet "sitting" on his neck. Record, p. 291. The identity of the shooter was not determined.

■ In reviewing the denial of a motion for summary judgment, this court applies the same standard as the trial court. *Ooms v. USX Corp.*, 661 N.E.2d 1250, 1252 (Ind.Ct.App.1996), *trans. denied*. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). All evidence and reasonable inferences drawn from the evidence are construed in favor of the nonmoving party. *Colonial Penn. Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997). The movant bears the burden of proving the absence of a genuine issue of material fact. *Mullin v. Municipal City of South Bend*, 639

N.E.2d 278, 281 (Ind.1994). Once the movant has sustained this burden, the opponent must set forth specific facts showing that there is a genuine issue of material fact. T.R. 56(E); *Mullin*, 639 N.E.2d at 281. Although summary judgment is generally inappropriate in a negligence case, it may be appropriate if the defendant demonstrates that the undisputed facts negate at least one element of the plaintiff's claim. *State Street Duffy's, Inc. v. Loyd*, 623 N.E.2d 1099, 1101 (Ind.Ct.App.1993), *trans. denied; Goldsberry v. Grubbs*, 672 N.E.2d 475, 477 (Ind.Ct.App. 1996).

■ In order for Christon to prevail on each claim for negligence, he must show that: (1) the defendant owed him a duty to exercise reasonable care; (2) the defendant breached that duty by failing to conform its conduct to the requisite standard of care; and (3) the plaintiff sustained injuries which were proximately caused by the defendant's breach. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991), *reh'g denied*. However, Christon need only demonstrate a genuine issue of material fact as to one of the elements to defeat a motion for summary judgment. Absent a duty, there can be no negligence. *Id.* at 998; *Fast Eddie's v. Hall*, 688 N.E.2d 1270, 1272 (Ind.Ct.App.1997), *reh'g denied*.

I.

■ We first address whether American Legion owed Christon a pre-existing duty to protect him from the criminal acts of a third party while in its building. We have held that the "duty to anticipate and to take steps to protect against a criminal act arises only when the *facts of a particular case* make it reasonably foreseeable that a criminal act is likely to occur." *Welch v. Railroad Crossing, Inc.*, 488 N.E.2d 383, 388 (Ind.Ct.App. 1986) (emphasis in original). Therefore, American Legion had no duty to protect Christon from the criminal acts of an unnamed, unidentified third party *unless* criminal acts likely to cause injury were reasonably foreseeable.[1] *See id.*

---

1. This applies whether American Legion served alcohol on their premises or not. *Welch v. Railroad Crossing, Inc.*, 488 N.E.2d 383, 388 (Ind.Ct.

App.1986) (holding that there is generally no duty on the part of a tavern owner to protect even his own patrons from the criminal acts of

We conclude from our review of the designated evidence that a criminal act likely to cause injury, such as the act causing Christon's injuries, was not reasonably foreseeable. American Legion tended to rent their building only to people it knew. Also, American Legion had never had anyone threaten to come in their building and harm anyone. Consequently, the security guards were hired by American Legion only for patrolling the parking lot and outside premises, not the interior of the building. The American Legion rented to AKA because the father of one of the sorority members was a member of the American Legion. In addition, the sorority members represented to Donald Ross, American Legion's Commander at that time, that the sorority desired the building for a closed, members-only party. Ross stated that had American Legion known "outsiders" would be invited, it would not have rented the building to the sorority. Thus, we conclude that the designated evidence clearly demonstrates that the shooting inside the building was not reasonably foreseeable. Therefore, American Legion had no pre-existing duty to protect Christon inside its building from the criminal acts of the unidentified assailant. *See id.*

## II.

■■■ We next address whether American Legion assumed a duty to protect Christon from the criminal acts of a third party while in its building. Christon contends that American Legion assumed the duty to protect him from being shot inside the building by maintaining a security guard at the entrance to the building.[2] American Legion responds that security guards were hired only to patrol the outside of the building and this alone does not constitute an assumption of a duty to protect patrons indoors. Nonetheless, it is well established that a party may assume a duty through affirmative acts. We have held:

third persons). *See also* 65 C.J.S. Negligence Sec. 63(126)(1966) (explaining that a proprietor of a tavern is not the insurer of the safety of his patrons; [n]or is he bound to anticipate the unexpected, independent acts of third persons).

"[A] duty may be imposed upon one who by affirmative conduct ... assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken. It is apparent that the actor must specifically undertake to perform the task he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully."

*Lather v. Berg,* 519 N.E.2d 755,. 766 (Ind.Ct. App.1988) (citations omitted), *reh'g denied.* Whether a party has assumed a duty and the extent of that duty are ordinarily questions for the trier of fact. *Robinson v. Kinnick,* 548 N.E.2d 1167, 1168 (Ind.Ct.App.1990), *reh'g denied, trans. denied.* However, assumption of a duty may be determined as a matter of law when there is no genuine issue of material fact. *Van Duyn v. Cook–Teague Partnership,* 694 N.E.2d 779, 781 (Ind.Ct. App.1998), *reh'g denied, trans. denied.*

Here, there is no designated evidence that American Legion, through affirmative conduct or agreement, gratuitously undertook a duty to protect Christon from the unforeseeable criminal act of a third-party. Again, American Legion had not experienced problems with threats to harm someone prior to this incident. It hired Secure Detective to provide outdoor security services. These services typically included watching the cars in the parking lot to prevent them from being broken into and walking older women to their cars on bingo night. The security personnel were not hired nor required by American Legion to perform any indoor security functions. Moreover, despite Christon's argument that he relied on the presence of the security guard when entering the building, there is no evidence that American Legion made any representations through its conduct or by agreement that the security personnel present at the building were for the benefit of his security or any representation that security personnel would be inside

2. Although American Legion hired the security guards to patrol the parking lots and outside premises, Christon observed a security guard at the entrance to the building on the night of the incident.

the building. Because the undisputed facts indicate that the duties of the security personnel were limited to outdoor services and not for the security of Christon or others indoors, American Legion did not assume a duty to protect Christon from the unforeseeable criminal act of being shot inside the building by a third-party. *See Van Duyn,* 694 N.E.2d at 781.

■　　　Finally, Christon argues that should Secure Detective be found negligent, its negligence may be imputed to American Legion thereby forming the basis of American Legion's liability. Generally, the employer of an independent contractor cannot be held liable for the negligent acts of the independent contractor. *Bagley v. Insight Communications Co., L.P.,* 658 N.E.2d 584, 586 (Ind.1995). However, Indiana recognizes five exceptions to the rule of nonliability. *Id.* One of these exceptions arises where the employer is charged with a specific duty by law or contract.[3] *Christensen v. Sears, Roebuck and Co.,* 565 N.E.2d 1103, 1107 (Ind.Ct. App.1991), *reh'g denied, trans. denied.* Such a duty of care may arise where one party voluntarily assumes such a duty. *Id.* However, we have concluded that the designated evidence demonstrates that American Legion neither owed a pre-existing duty nor assumed a duty to protect Christon from the unforeseeable criminal act of being shot inside the building by a third party. Consequently, this exception to the general rule of nonliability is inapplicable. Thus, Secure Detective's alleged negligence cannot be imputed to American Legion. In sum, American Legion may not be held liable to Christon for damages resulting from the unforeseen criminal act that caused his injuries. Therefore, the trial court improperly denied summary judgment for American Legion. *See Welch,* 488 N.E.2d at 388; *Van Duyn,* 694 N.E.2d at 781.

## III.

■　We next consider whether Secure Detective assumed a duty to protect Christon

from the criminal act of a third party while providing security services for American Legion. Specifically, we examine whether the designated evidence reveals genuine issues of material fact as to whether Secure Detective assumed a duty to protect Christon from the unforeseeable criminal act of being shot inside the building by a third party. We may decide whether Secure Detective assumed a duty to protect Christon only if there are no genuine issues of material fact. *See Van Duyn,* 694 N.E.2d at 781.

Here, Christon submitted the affidavit of Dwayne Keith Hood, one of the security guards at American Legion's building on December 12 and 13, the night of the party. Hood affirmed that he checked in with Wynona Davis, the president of AKA, who told him to watch the door and the entrance to the party. Consequently, Hood stood inside the east door observing until he dispersed a crowd that had gathered outside, pursuant to the request of an AKA member. Supplemental record, p. 60. He then returned to his position inside the east doors.

After some time, a member of the sorority escorted a man from the party and informed Hood that she wanted the individual to leave because he had been in an argument and had commented that he had a weapon, a hand gun. Supplemental record, p. 60. The sorority member then instructed Hood that the man not be allowed to return to the party so long as he had a weapon on his person. As Hood explained:

"I had observed this male come in to the party when he first arrived, as well as another male who had accompanied him ... [after the male individual had been escorted out of the party] I had a confrontation with [him] and who was, at that time, attempting to go back in to the party. He admitted to me he had been in possession of a hand gun and he insisted he was going inside; he said he was not taking his gun to the car because he had a permit for it and, thus, he could take it where he

---

**3.** The other four exceptions arise: where the contract requires the performance of work that is intrinsically dangerous; where the act will create a nuisance; where the act to be performed will probably cause injury to others unless due pre-

caution is taken to avoid harm; and, where the act to be performed is illegal. *Bagley v. Insight Communications Co., L.P.,* 658 N.E.2d 584, 586 (Ind.1995). The facts of this case do not support the application of these other exceptions.

wanted to. I informed him he couldn't on private property if the owner or representative of said property did not want him to do so. He kept looking at the gun in my holster and then he finally agreed to take his gun to his car after being told he could return if he was unarmed.

[The male individual] returned to the entrance to the party. I patted him down and he had no weapon on him. At this time, he made the statement to me that 'this is bull' and that his partners, as he put it, would take care of the problem."

Supplemental record, p. 60. Hood affirmed that the man left soon after he entered and then returned again. Hood then patted him down again, determined that he was without a weapon, and re-admitted him to the party. This designated evidence is sufficient to raise genuine issues of material fact as to whether Secure Detective, through the affirmative actions of Hood, assumed a duty to protect the people in attendance at the party when Hood agreed to prevent the man from returning to the party with a weapon.[4]

Secure Detective next argues that the guard's actions were outside the scope of his employment. We have held:

"The determination of whether an employee was acting within the scope of his employment does not turn on the type of act committed. An employer can be vicariously liable for the criminal acts of an employee. The test is whether the employee's actions were at least for a time authorized. *If there is a sufficient association between the authorized and unauthorized acts, then the unauthorized acts can be within the scope of employment. If some of the employee's actions were authorized, the question of whether the unauthorized acts were within the scope of employment is one for the jury.* However, if none of the employee's acts were authorized, there is no respondeat superior liability and summary judgment is proper."

*Konkle v. Henson*, 672 N.E.2d at 450, 457 (Ind.Ct.App.1996) (emphasis added). Here, the guard performed authorized acts when he escorted some of the sorority women who were carrying money to their car, and patrolled the entrance to the building and the parking lot. As these are clearly authorized acts, the question of whether there existed "sufficient association between the authorized acts and unauthorized acts" to place the unauthorized acts within the scope of employment is a question for the jury. *See id.* As there are genuine issues of material fact as to whether Secure Detective had a duty to protect Christon, we may not decide the issue as a matter of law. *See Van Duyn*, 694 N.E.2d at 781.

For the foregoing reasons, we reverse the trial court's order denying American Legion's motion for summary judgment and affirm the order denying Secure Detective's motion for summary judgment.

Affirmed in part, reversed in part.

BROOK, J., and SULLIVAN, J. concur.

---

4. Secure Detective also argues that even if Hood assumed a duty, the assumption of the duty did not "flow" to Christon. Rather, Secure Detective contends the special relationship created when Hood agreed to pat down the unidentified individual attached only to the sorority member requesting the assistance and not Christon. Although the question would again be one for the trier of fact, we find Secure Detective's argument to be tenuous at best. Clearly, the scope of the duty to prevent an individual from entering a party with a weapon extends to the foreseeable class of all those in attendance.