**Nicholas S. KING, b/n/f Randall S. King, Randall King and Peggy L. King, Appellants (Plaintiffs),**

v.

**NORTHEAST SECURITY, INC. and Metropolitan School District of Washington Township, Appellees (Defendants).**

No. 49S02–0104–CV–193.

Supreme Court of Indiana.

June 27, 2003.

C. Dennis Wegner, Jeffrey K. Orr, C. Dennis Wegner & Assoc., P.C., Indianapolis, IN, Attorneys for Appellants.

Andrew P. Wirick, Hume, Smith, Geddes, Green & Simmons, LLP, John P. Daly, Jr., Mark A. Holloway, Stephenson, Daly, Morow & Kurnick, David M. Mattingly, Mary Nold Larimore, Ice Miller, Indianapolis, IN, Attorneys for Appellees.

## CIVIL TRANSFER

RUCKER, Justice.

In this appeal, we hold that a school district is not immune from a claim that the district failed to take reasonable steps to provide security for persons on its premises. We further hold that a security service employed by a school district may be liable for negligence in carrying out its contractually assumed obligations.

### *Facts and Procedural History*

After some incidents of criminal mischief during the previous two years, the Assistant Superintendent for the Metropolitan School District of Washington Township ("the District") entered into a contract with Northeast Security, Inc. ("Northeast") for security services at North Central High School in the 1995–96 school year. Specifically, Northeast was to provide three uniformed Special Deputies positioned outside the school in marked white security vehicles from 7:00 a.m. to 3:30 p.m. The Special Deputies were to perform the following duties:

Provide exterior patrols at checkpoints for all North Central High School buildings by the means of three vehicle patrols occupied by three Marion County Special Deputies provided and employed by Northeast Security. These officers are trained personnel and understand the procedures of patrol. They will also be responsible for insuring all personnel that enter the premise[s] are possessing the proper identification. They are to be observant of any criminal activity which may occur in the parking lots and to the exterior of the building.

R. at 53. Northeast was to be paid $6,375 every two weeks for these services.

On April 18, 1996, the Northeast employee posted in the parking lot was inside the school building making a personal telephone call when classes were dismissed at 3:00 p.m. As Nicholas King stood in the school parking lot waiting for a ride home with another student, a large crowd approached. After a verbal exchange, the crowd increased and some began yelling and screaming. Ultimately a student struck King, and then others joined in. Finally, someone yelled that the police were coming and the crowd of students quickly dispersed. One eyewitness stated he was one of the last students to leave and never saw the police. As a result of the beating, King suffered two fractures to his jaw as well as several lacerations and bruises to his head and body.

King sued both Northeast and the District. Both defendants moved for summary judgment on the ground that neither owed King a duty to protect him from the criminal acts of third parties. The trial court granted summary judgment in favor of Northeast, holding that King was not a third party beneficiary of the security services agreement between Northeast and the District. The trial court also granted

summary judgment in favor of the District on the ground that, as a governmental entity, it did not owe a private duty to King to protect him from the alleged harm. King appealed.

The Court of Appeals affirmed summary judgment in favor of Northeast, but held that the District could be liable to King for breach of its duty to supervise the safety of its students. Accordingly, the Court of Appeals reversed the trial court's summary judgment order as to the District. *King v. Northeast Sec., Inc.,* 732 N.E.2d 824, 840–41 (Ind.Ct.App.2000). Both King and the District sought transfer, which we previously granted. *King v. Northeast Sec.,* 753 N.E.2d 10 (Ind.2001).

### *Discussion*

### *I. The School District*

The Court of Appeals reversed the trial court's grant of summary judgment in favor of the District, finding the District owed a duty to exercise reasonable care for the safety of students under its authority. *Id.* at 833, 840–41. The District concedes that it had this general duty, but contends that the District is protected by governmental immunity under the Tort Claims Act and a common law doctrine that there is no duty to protect against criminal activity of others. In the alternative, the District argues that even if it is not immune, there is no breach of duty because the District took reasonable steps for the safety of its students.

### *A. Common Law Immunity*

█ For an interesting account of the origins of sovereign immunity at common law, see *Peavler v. Board of Commissioners of Monroe County,* 528 N.E.2d 40, 41–42 (Ind.1988). For these purposes, it is sufficient to note that Indiana, like many jurisdictions, over the years found the doctrine increasingly unsatisfactory. In

1972, in *Campbell v. State,* 259 Ind. 55, 284 N.E.2d 733, 736–37 (1972), this Court concluded that the doctrine of sovereign immunity was an outmoded concept in today's society, and suggested that the proper forum for any debate over governmental immunity was the legislature. Accordingly, *Campbell* held that governmental units would generally no longer be shielded by sovereign immunity. *Id.* However, *Campbell* cited three situations where a governmental unit would remain immune from liability for acts or omissions that result in personal injuries. These were: (1) where a city or state fails to provide adequate police protection to prevent crime; (2) where a state official makes an appointment of an individual whose incompetent performance gives rise to a suit alleging negligence on the part of the state official for making such an appointment; and (3) where judicial decision-making is challenged. *Id.* at 737.

In response to *Campbell,* in 1974 the Indiana legislature enacted the Indiana Tort Claims Act ("ITCA") which identified a list of governmental activities, now twenty-two in number, that are immunized from tort liability. *See* Ind.Code § 34–13–3–3. After a number of detours since that time, *Campbell* was largely reaffirmed in *Benton v. City of Oakland City,* 721 N.E.2d 224 (Ind.1999). Thus, some common law immunity doctrines remain despite the ITCA's codification of much of Indiana's governmental immunity law.

█ *Benton* held that a municipality could be held liable for failure to warn of a dangerous condition in a municipally operated swimming facility. *Benton* did away altogether with a malfeasance/nonfeasance test of immunity. It also expressly limited a public/private duty test of immunity to claims for failure to provide emergency

services.[1] *Id.* at 233. King's claim here is therefore not governed by either doctrine. *Benton* spoke in terms of duty rather than immunity:

> We hold that *Campbell* is properly applied by presuming that a governmental unit is bound by the same duty of care as a non-governmental unit except where the duty alleged to have been breached is so closely akin to one of the limited exceptions (prevent crime, appoint competent officials, or make correct judicial decisions) that it should be treated as one as well.

*Id.* at 230. To say the governmental entity is immune for acts or omissions in described areas is the functional equivalent of asserting the entity has no duty to anyone in carrying out those activities. *Benton* held that under common law, governmental units have "the same duty of care as non-governmental entities," with the exception of the three *Campbell* areas. In immunity terms, the governmental unit is immune under the common law only if it is engaged in an activity closely related to one of the three areas identified in *Campbell.*

Based on precedent establishing a duty to operate public facilities, *Benton* rejected common law immunity for negligent operation of a municipal swimming facility. *Id.* at 233–34. Precedent is also against the District's claim of immunity from King's claim. We have held repeatedly that school districts can be held liable for failure to take reasonable steps to provide security for their students. *Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 974 (Ind.2001); *Beckett v. Clinton Prairie Sch. Corp.,* 504 N.E.2d 552, 553 (Ind.1987); *Norman v. Turkey Run Cmty. Sch. Corp.,* 274 Ind. 310, 411 N.E.2d 614, 617 (1980); *Miller v. Griesel,* 261 Ind. 604, 308 N.E.2d 701, 706 (1974). In *Benton* duty terms, the school district has a duty to take reasonable steps for the protection of its students. In immunity terms, failure to take reasonable safety precautions is not within the common law immunity for failure to prevent crime.

The District relies on *Simpson's Food Fair, Inc. v. City of Evansville,* 149 Ind. App. 387, 272 N.E.2d 871 (1971), for its claim of common law immunity. In that case, city police were held immune from liability for failing to prevent crime in a store located in a high crime area. The District contends that if immunity is not granted for a school's failure to prevent crime, then schools, school administrators, and school boards will be "second-guessed by juries for the measures they should have or could have taken to prevent criminal conduct of any student." Appellee's Br. in Supp. of Pet. to Trans. at 5.

It is a matter for the legislature to the extent that school districts or other governmental agencies whose mission is not law enforcement are exposed to undesired liability. To the extent the District asserts common law immunity, we think the school's activities here are more "closely

---

1. *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278 (Ind.1994) adopted a public/private duty test. A private duty, and resulting vulnerability to suit, was imposed on governmental entities where each of the following was present: (1) an explicit assurance by the unit that it would act on behalf of the injured party; (2) knowledge on the part of the unit that inaction could lead to harm; and (3) justifiable and detrimental reliance by the injured party on the unit's affirmative undertaking. *Id.* at 284. The following year, *Henshilwood v. Hendricks County,* 653 N.E.2d 1062, 1067–68 (Ind.Ct.App.1995), *trans. denied, overruled by Benton,* 721 N.E.2d at 224, held that the public/private duty test applies only when a governmental entity is alleged to have been negligent by failing to act (nonfeasance), but does not apply when the governmental entity has affirmatively acted to create the plaintiff's perilous situation (malfeasance).

akin" to those of landowners or businesses generally that must provide reasonable security for their patrons and guests. *See Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 974 (Ind.1999). Indeed, there is specific precedent on this point. *See Miller*, 308 N.E.2d at 706 (recognizing that school authorities must exercise reasonable care and supervision for the safety of the children under their control).

Finally, the Court of Appeals in this case concluded that *Benton* applies only in the context of a governmental unit's duty to maintain a public recreational facility in a reasonably safe manner. *King*, 732 N.E.2d at 833. In reaching this conclusion, the Court of Appeals relied on *Serviss v. Indiana Department of Natural Resources*, 721 N.E.2d 234 (Ind.1999). In that case we observed that *Benton* "ultimately held" that "the city was not entitled to summary judgment as a matter of law on the issue of its 'long-recognized duty to maintain a public recreational facility in a reasonably safe manner.'" *Id.* at 236 (quoting *Benton*, 721 N.E.2d at 233). This passage merely describes the result in *Benton;* it does not limit *Benton's* application to its factual setting. Rather, *Benton* stands for the general proposition that common law immunity with respect to all governmental activities is limited to activities "closely akin" to the three *Campbell* areas.

■ In sum, we do not think the common law confers blanket immunity for every school and every other governmental entity that fails to take reasonable precau-

tions for the safety of persons or their facilities. If the *Campbell* exception extended as far as the District proposes, it would grant immunity to any and all governmental units that fail to arrange reasonable security. Like many governmental units, and unlike the police who were immune in *Simpson's Food Fair*, the District's principal mission is not to prevent crime. Indeed, *Campbell* itself appears to limit its law enforcement immunity to "cities and states" that understand their role as providing general police protection throughout the jurisdiction. *Campbell*, 284 N.E.2d at 737.

## B. Indiana Tort Claims Act Immunity

The District argues that the Court of Appeals failed to address its claim of immunity under the Indiana Tort Claims Act. I.C. § 34–13–3–3. Specifically, the District contends that both section 3(9) and 3(7)[2] of the ITCA shield the District from liability for negligence. "The party seeking immunity bears the burden of establishing its conduct comes within the Act." *Mullin*, 639 N.E.2d at 281.

### 1. Immunity for Acts of Non–Governmental Employees

■ The District is a governmental entity within the meaning of the ITCA[3] and therefore enjoys the immunity conferred by the statute pursuant to Indiana Code section 34–6–2–49. Section 3(9) provides, "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... [t]he act or omission of anyone

---

**2.** We note that sections 3(9) and 3(7) are currently codified at sections 3(10) and 3(8) respectively. However, the wording of the statute remains identical to the former sections 3(9) and 3(7). Accordingly, for the sake of consistency we will refer to sections 3(9) and 3(7) for the remainder of this opinion.

**3.** *See* I.C. § 34–6–2–110 (providing in pertinent part, "[p]olitical subdivision, for purposes of IC § 34–13–3, means a ... (9) school corporation").

other than the governmental entity or the governmental entity's employee."

■ Section 9 immunity applies in "actions seeking to impose vicarious liability by reason of conduct of third parties" other than governmental employees acting within the scope of their employment. *Hinshaw v. Bd. of Comm'rs of Jay County*, 611 N.E.2d 637, 640–41 (Ind.1993). "Under such circumstances, the alleged basis of governmental entity liability is the act or omission of a third person not within the scope of employment as a government employee." *Id.* at 641.

■ The District is correct that "a principal is not liable for the negligence of an independent contractor." *Bagley v. Insight Communications Co., L.P.*, 658 N.E.2d 584, 586 (Ind.1995). And the District is also correct that the statute does more for governmental entities than the common law does for others. Thus, the District contends that it is immune to the extent liability is predicated on the act or omission of Northeast or Northeast's employees. However, there is a dispute of fact over whether the injuries King suffered were caused by an act or omission of Northeast or by the District itself. One of King's allegations is that the District was negligent because the Assistant Vice Principal Bart Austin, who normally stayed outside the school building to personally monitor the students' departure, was absent the day of King's incident and did not find a replacement. The District has not

shown as a matter of law that its conduct comes within the Act. Accordingly, summary judgment for the District on the basis of section 3(9) is inappropriate.

### 2. Immunity for Law Enforcement

■ The District also relies on section 3(7) of the ITCA for its claim of immunity. That section provides:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... [t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

I.C. § 34–13–3–3(7). The District argues it is immune pursuant to section 3(7) because "the [District] failed to prevent an assault or battery, or failed to enforce a rule or regulation (student misconduct, substantial disobedience or unlawful activity)." Appellee's Br. in Supp. of Pet. to Trans. at 13.

In *Quakenbush v. Lackey*, 622 N.E.2d 1284, 1288–91 (Ind.1993), this Court discussed at some length the meaning of "enforcement" as used in section 3(7).[4] We concluded first that section 3(7) was intended to codify the common law of immunity in this area as that law existed at the time the ITCA was passed. Second, under that common law regime, governments and their employees were subject to liability for "the breach of private duties owed to

---

**4.** This Court originally interpreted section 3(7) to mean that governmental entities would be immune under the ITCA for "all acts of enforcement save false arrest and imprisonment." *Seymour Nat'l Bank v. State*, 422 N.E.2d 1223, 1226 (Ind.1981), *clarified on reh'g*, 428 N.E.2d 203 (Ind.1981). This Court later retreated from *Seymour's* broad view of law enforcement immunity and held the legislature intended to include "only those activities attendant to effecting the arrest of those

who may have broken the law." *Tittle v. Mahan*, 582 N.E.2d 796, 801 (Ind.1991). The Court subsequently revisited the issue in *Quakenbush* and overruled *Tittle* by reaffirming the statutory language confirming immunity under section 3(7) for the decision of any governmental entity and its employees about "whether to adopt or enforce any statute, rule, or regulation." *Quakenbush*, 622 N.E.2d at 1287 n. 3.

individuals, but were immune from liability for the breach of public duties owed to the public at large." *Id.* at 1291. Subsequent Indiana decisions relied on this public/private duty test in applying section 3(7),[5] but others have concluded *Benton* eliminated the test.[6] As explained in Part I.A., *Benton* addressed only the common law presence or absence of duty of a governmental unit. It did not deal with statutory immunity under the ITCA. Indeed, *Benton* expressly observed, "In general, it is only after a determination is made that a governmental defendant is not immune under the ITCA that a court undertakes the analysis of whether a common law duty exists under the circumstances." *Benton,* 721 N.E.2d at 232.

Although *Benton* did not expressly disavow *Quakenbush's* public/private duty test under section 3(7), we believe it implicitly achieved this result. *Quakenbush* held that section 3(7) adopted the common law of immunity for law enforcement activities, and concluded that the public/private duty test was the common law approach to law enforcement immunity at the time the ITCA was enacted. We do not believe the public/private duty test was frozen by statutory adoption. It is a tool for applying the "adopting or enforcing of a law" language, but as *Benton* pointed out, this test is frequently not susceptible to ready application. *Id.* For that reason, *Benton* overruled the public/private duty test at

common law. We think the courts remain free to interpret the statutory language without referring to the public/private duty analysis when appropriate.

■ We think the statute itself provides the key to resolution of the immunity issue in this case. Section 3(7) confers immunity on governmental units for "the adoption and enforcement of or failure to adopt or enforce a law." We think this language restricts the immunity to the adoption and enforcement of laws that are within the assignment of the governmental unit. First, it is clear that "laws" include "rules and regulations." Thus, a variety of administrative and executive functions engage in some immunized activities. But not all actions are immunized. The statute refers to immunity for the "adoption and enforcement" of a law. Only a unit charged with regulating the areas of law involved can "adopt" a law. Similarly, the "enforcement" of a law is an activity assigned to specific units of government: the police, the Board of Health, etc. The immunity for failure to "adopt" or "enforce" is similarly limited.

■ We think this interpretation is supported by the language of section 3(7) and is also consistent with other provisions of the ITCA and existing case law. An employee is protected under the terms of section 3 of the ITCA only if "acting within the scope of the employee's employment."

**5.** *See, e.g., Kemezy v. Peters,* 622 N.E.2d 1296, 1297 (Ind.1993); *Fries v. Fincher,* 622 N.E.2d 1294, 1295 (Ind.1993); *Belding v. Town of New Whiteland,* 622 N.E.2d 1291, 1293 (Ind. 1993); *Minks v. Pina,* 709 N.E.2d 379, 386 (Ind.Ct.App.1999) (Ratliff, J., dissenting), *trans. denied.*

**6.** *See, e.g., City of Anderson v. Davis,* 743 N.E.2d 359, 363–64 (Ind.Ct.App.2001), *trans. denied* (noting *Benton* "explicitly disavowed the *Quakenbush* public/private duty test"); *O'Bannon v. City of Anderson,* 733 N.E.2d 1,

2–3 (Ind.Ct.App.2000) (recognizing that *Quakenbush's* public/private duty test was replaced by "the common law presumption that a governmental unit 'is bound by the same duty of care as a non-governmental unit except where the duty alleged to have been breached is so closely akin to one of the limited exceptions that it should be treated as one as well' " (quoting *Benton,* 721 N.E.2d at 230)); *Minks,* 709 N.E.2d at 382 (ignoring *Quakenbush's* public/private duty test and applying *Mullin's* "compelling or attempting to compel" test).

I.C. § 34–13–3–3. Similarly, case law has held that the ITCA expresses a legislative policy to protect the State's finances and also to ensure " 'that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment.' " *Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450, 452 (Ind.2000) (quoting *Ind. Dep't of Corr. v. Stagg,* 556 N.E.2d 1338, 1343 (Ind.Ct.App.1990), *trans. denied* ). *See also Martin v. Heffelfinger,* 744 N.E.2d 555, 559 (Ind.Ct.App.2001); *Ind. State Police Dep't v. Swaggerty,* 507 N.E.2d 649, 651–52 (Ind.Ct.App.1987), *trans. denied; Bd. of Comm'rs of Hendricks County v. King,* 481 N.E.2d 1327, 1330 (Ind.Ct.App.1985). An employee's scope of employment consists of activities involving the pursuit of the governmental entity's purpose. Similarly, we think the legislature intended that a governmental entity be immune only for failing to adopt or enforce a law that falls within the scope of the entity's purpose or operational power.

Case law supports the notion that section 3(7) is limited to those laws, rules, or regulations that fall within the realm of the governmental entity. *Stagg,* 556 N.E.2d at 1342 ("The defendants were acting within the scope of their employment in enforcing laws, rules or regulations pertaining to the standards and procedures for the operation of the correctional facilities pursuant to [the Indiana statute]."); *City of Seymour v. Onyx Paving Co., Inc.,* 541 N.E.2d 951, 958 (Ind.Ct.App.1989) ("[T]he

zoning ordinance at issue here is part of the municipal code of Seymour [and] adopted in accordance with [the Indiana act] delegating to local legislative bodies the authority to enact zoning ordinances and amendments thereto."), *trans. denied; Ind. Dep't of Natural Res. v. Taylor,* 419 N.E.2d 819, 823 (Ind.Ct.App.1981) ("Insomuch as this action was undertaken by the Department pursuant to a duty entrusted to it by statute, it qualifies for immunity under [subsections (5), (6), or (7) ].").

We do not think a school district is "enforcing" a law when it provides for school security, even if the action taken may deter or prevent acts that would violate a law "adopted" and "enforced" by other units of government. It is correct, as the District points out, that schools are authorized to promulgate rules for school discipline.[7] But preventing crime is not an activity schools are expected to carry out pursuant to a school's operational purpose. Put another way, even though the school must reasonably supervise the students for safety reasons, it is not the mission of the school to prevent crime. Indeed, the statutes the Indiana legislature enacted on behalf of the elementary and secondary schools providing for student discipline authorize disciplinary rules "reasonably necessary to carry out the school purposes." I.C. § 20–8.1–5.1–7(c). Schools have the power to expel or suspend students for student misconduct or unlawful activity and can claim immunity for doing so or failing to do so. But we think a school has no immunity for failing to prevent an assault and battery. It has the obligation to

---

**7.** Indiana Code section 20–8.1–5.1–8 provides that students can be suspended or expelled for student misconduct or substantial disobedience on school grounds immediately after school hours. I.C. § 20–8.1–5.1–8. Indiana Code section 20–8.1–5.1–9 provides that students may be suspended or expelled for en-

gaging in unlawful activity on or off school grounds if the activity interferes with school purposes or educational functions or the student's removal is necessary to restore order or protect persons on the school property. I.C. § 20–8.1–5.1–9.

take reasonable steps to provide security on its premises, even if it has not adopted any rules or regulations prohibiting assaults. As the District stated in its brief, "Law enforcement is not a traditional responsibility of the School." Appellee's Br. in Supp. of Pet. to Trans. at 16. Accordingly, immunity for "enforcement" of laws prohibiting an assault and battery is reserved to governmental units with police powers—not schools.

The District relies on *Klobuchar v. Purdue Univ.*, 553 N.E.2d 169 (Ind.Ct.App. 1990), in claiming it is immune under section 3(7). In *Klobuchar*, the plaintiff, a part-time student at Purdue University, was seriously injured when attacked by her estranged husband after class. When the plaintiff was attacked, she was parked in a campus parking lot that required vehicles to exhibit a school parking ticket. The campus police routinely checked vehicles in the lot for permits. The plaintiff claimed her injuries were proximately caused by the University's failure to provide adequate security for the school's parking lot. The University moved for summary judgment claiming it was immune under the ITCA. *Id.* at 170. The court found that the University was given the authority to provide campus security by statute, and the decision to provide security or to patrol the parking lot for permit violators is a decision on whether or not to enforce the law. *Id.* at 173. Relying in part on the public/private duty test, the court concluded that the police duty is one owed to the general public and does not give rise to an individual action. As a result, the University was immune from liability for failing to enforce the law. *Id.* Assuming *Klobuchar* was correctly decided, it does not extend immunity to the District in King's case. Purdue University, pursuant to statute, provided campus

security for the safety of the general public.[8] *Id.* Here, although the school must exercise reasonable care and supervision for the safety of the children under its control, it is not charged with general law enforcement on its premises. *See Miller,* 308 N.E.2d at 706.

## C. *Negligence*

■■■■■■ In order to prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. *Ashcraft v. Northeast Sullivan County Sch. Corp.*, 706 N.E.2d 1101, 1103 (Ind.Ct.App.1999). This jurisdiction has long recognized that school authorities owe a "duty ... 'to exercise reasonable care and supervision for the safety of the children under their control.'" *Mangold,* 756 N.E.2d at 974 (quoting *Miller,* 308 N.E.2d at 706). Although the existence of duty is a matter of law for the courts to decide, a breach of duty is usually a matter left to the trier of fact. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371–72 (Ind.1992). Only where the facts are undisputed and lead to but a single inference or conclusion may the court as a matter of law determine whether a breach of duty has occurred. *Id.* at 1372.

■■■■ King alleges the District failed to exercise reasonable care in part because Assistant Vice Principal Bart Austin, who normally stayed outside the school building to personally monitor the students' departure, was absent the day of King's incident and did not find a replacement. King contends that he would not have been injured if Austin had been present at his regular post to observe and deter criminal activity in the parking lot. The District

8. I.C. § 20–12–3.5–1.

essentially responds that it discharged any duty owed to students by entering into a contract with Northeast to provide services for North Central High School. Essentially, the District takes the position that it has breached no duty owed to its students.

Summary judgment is inappropriate in this case because there is a discrepancy in the evidence bearing on the extent of control retained by the District, and also how it was exercised. The contract between Northeast and the District required Northeast officers to be outside from 7:00 a.m. to 3:30 p.m.[9] We also have the incomplete testimony that District officials were, on some occasions, present in the parking lot at 3:00 p.m., but at least Austin, the senior person among them, was absent on April 18. Further, whether merely entering a contract is all the District should have done or was required to do in discharging its duty of care and supervision for the safety of its students is a matter for the jury to decide and is not appropriate for summary disposition.

## II. Northeast Security, Inc.

■ The trial court granted Northeast's motion for summary judgment on the grounds that a direct action against Northeast was not consistent with the terms of the contract entered into by the District and Northeast and that King was not a third party beneficiary to the contract because King was unable to show the District owed a particularized obligation to any single student of the school.

Both King and Northeast focus on whether Northeast owed a duty to King under a negligence theory. Both cite the proposition that "[t]he status of a third party beneficiary may be used as a basis of duty in a negligence action." *Emmons v. Brown*, 600 N.E.2d 133, 134 (Ind.Ct.App. 1992). Northeast relies on the Court of Appeals' view that Northeast did not assume a duty because there was no clear intent to benefit King specifically under the contract with the District. *See King*, 732 N.E.2d at 840. Northeast further argues the District, and not Northeast, is the premises owner so any duty created under a premises liability theory can only be owed by the District. Northeast also contends it did not have a duty to King because no relationship existed between King and Northeast and because Northeast did not have knowledge of prior criminal activity on the District's premises.

Status as a third party beneficiary has been held sufficient to create tort liability to the beneficiary on the part of a party to the contract. *Emmons*, 600 N.E.2d at 134. We think, however, that it is not necessary that the plaintiff be a third party beneficiary in order to assert a claim. King's claim is a tort claim for simple negligence. Whether or not King and his fellow students acquired rights under the agreement under contract law, we think it is clear that the purpose of the agreement was to provide security services for the school. We think it equally plain that the agreement was to protect all members of the public, including students, who were properly on the premises. Under the contract, Northeast had an obligation to the District. We see no reason why the contract requiring

---

9. Northeast designated evidence in support of its motion for summary judgment that Austin told Northeast officers that they should abandon their posts outside the school building and come inside before the 3:00 p.m. dismissal. John Sebring, the chief of Northeast, testified that the assigned posts of the security officers "changed daily per Mr. Bart Austin. At 2:40 p.m., the officers generally moved from outside to inside the school. The decision to have the officers move inside was made by either Mr. Austin or Marion County Sheriff's Department officers." R. at 57. However, this evidence was not designated by King in his response to the District's motion for summary judgment, R. at 241–42, and therefore, was not before the court as to the District's motion. Ind. Trial Rule 56(C).

Northeast to "[p]rovide exterior patrols[,] insur[e] all personnel that enter the premise[s] are possessing the proper identification, [and] be observant of any criminal activity which may occur in the parking lots" would not include providing safety for students. R. at 53.

The students, including King, are plainly among the persons who are properly on the premises and entitled to expect reasonable steps to be taken for their safety. The District in turn has an obligation to its students and others to take reasonable steps for their safety. We see no reason why negligent failure to carry out these assumed responsibilities should not give rise to liability to students who are injured as a result. There may be significant issues as to negligence and causation that remain in this case. But at this summary judgment stage, there is nothing inherent to the students' status or relationship to

the District or Northeast that prevents recovery. Nor is the class of persons who are properly on school premises so remote that liability to them should be precluded as a matter of law for injuries resulting from negligent performance of assumed responsibilities.

In rebuttal to Northeast's argument that it never assumed a duty to act for King's benefit, King points to *American Legion Pioneer Post v. Christon*, 712 N.E.2d 532 (Ind.Ct.App.1999), *trans. denied,*[10] and *Lather v. Berg*, 519 N.E.2d 755 (Ind.Ct. App.1988).[11] *Christon* stated:

[A] duty may be imposed upon one who by affirmative conduct ... assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken. It is apparent that the actor must specifically undertake to perform the task he is charged with having performed negligently, for without the

---

10. In *Christon*, the American Legion rented a portion of its building to a sorority for a party attended by the plaintiff. The American Legion employed a security service to patrol the parking lot and outside premises, but not the interior of the building. The security services that were provided typically included "watching the cars in the parking lot to prevent them being broken into and walking older women to their cars on bingo night." *Christon*, 712 N.E.2d at 535. The security guard who was patrolling the night of the party was asked by the president of the sorority to watch the door and entrance to the party. After some time, a sorority member escorted a man from the party and informed the security guard that she wanted the individual to leave because he had been in an argument and commented that he had a handgun. The sorority member instructed the guard that the man was not to be allowed to return to the party so long as he had a weapon on his person. *Id.* at 536. The man left, but tried to re-enter the party later. The security guard allowed him to enter after patting him down and determining that he did not have a weapon. *Id.* at 537. Subsequently, the plaintiff was shot during the party, although the identity of the shooter was not determined. *Id.* at 534. The court found that the designated

evidence raised genuine issues of material fact as to whether the security service, through the affirmative actions of the security guard, assumed a duty to protect the people in attendance at the party when the guard agreed to prevent the man from returning to the party with a weapon. *Id.* at 537.

11. In *Lather*, Keith Murphy, a minor, left the home of Joseph Berg, one of the defendants, in a drunken rage driving at speeds in excess of one hundred miles per hour. Murphy crashed into the plaintiff's patrol car killing him. *Lather*, 519 N.E.2d at 757. On the evening of the accident, Berg had possession of Murphy's car keys at one point, but gave them back to Murphy. *Id.* at 758. The administratrix of the plaintiff's estate sued the defendants claiming, among other things, that because Berg took possession of Murphy's car keys, the defendants negligently performed a gratuitously assumed duty to protect the deceased victim. *Id.* at 765. The court found that the defendants did not assume a gratuitous duty to protect the deceased victim because Murphy, who had an extra set of keys to his car, never relinquished control of the keys and the defendants never took control of the car. *Id.* at 767.

actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully. *Christon*, 712 N.E.2d at 535 (quoting *Lather*, 519 N.E.2d at 766). Northeast argues *Christon* is inapplicable because King "submitted no evidence showing either an attempt to protect Nick King or to restrain his assailants by Northeast." Appellee's Br. in Resp. to Pet. to Trans. at 3.

The issue is not how, but whether, an obligation is undertaken. The guard in *Christon* agreed to achieve a specific goal of keeping a designated individual away from the party where the plaintiff was injured. Northeast's more general undertaking was to "observe criminal activity in the parking lot." If the trier of fact concludes that Northeast's failure to "observe" King's assault was due to its negligence and was a proximate cause of King's injuries, recovery is appropriate.

■■■ In support of its argument that it did not have knowledge of prior criminal activity on the premises, and therefore, it cannot be liable for King's injuries, Northeast points to language in *Christon* declaring "the duty to anticipate and to take steps to protect against a criminal act arises only when the facts of a particular case make it reasonably foreseeable that a criminal act is likely to occur." *Christon*, 712 N.E.2d at 534. We disagree with Northeast's contentions for two reasons. First, the quoted language from *Christon* was in the course of analyzing the liability of the premises owner, American Legion, not the security service the American Legion had hired. Second, the presence of prior criminal activity is relevant to the standard of reasonable conduct of both the District (is there a need for additional precautions) and Northeast (is it reasonable to abandon surveillance of the parking lot at 3:00 p.m.). Accordingly, those specifically engaged in providing services undertaken for security services may well be found to have a higher standard of care than the public at large, whether or not they are on notice of specific activity at the site. *Rosh v. Cave Imaging Sys., Inc.*, 26 Cal.App.4th 1225, 32 Cal.Rptr.2d 136, 139 (1994) (establishing the requisite standard of care of a security guard company through expert testimony); *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 170–71 (Minn.1989) (noting that a security firm hired by a commercial parking ramp owner has a "duty to use that degree of care which a reasonably prudent professional security firm would use").

■■■ Finally, Northeast contends that the District is the premises owner and Northeast never owned, leased, or otherwise controlled the premises. Northeast argues that any duty owed under the premises liability theory can be owed by the District alone. Again we disagree. The contract provided for the security guards' presence, observation, and security of the premises. The contract specifically stated, "These officers are trained personnel and understand the procedures of patrol." R. at 53. Northeast was paid $6,375 every two weeks for these services. Northeast, as a privately-hired and compensated security service, was in at least as good a position as the District to prevent injuries to third parties on the premises.

### Conclusion

Having previously granted transfer, we reverse the trial court's grant of summary judgment in favor of the District and in favor of Northeast. This cause is remanded.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.