# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JOE KEITH LEWIS**
Marion, Indiana

ATTORNEY FOR APPELLEE:

**KIRK A. HORN**
Mandel Horn, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RICHARD PRANCIK, b/n/f, RENEE PRANCIK, | ) |
| Appellant, | ) |
| vs. | )   No. 27A05-1302-CT-86 |
| OAK HILL UNITED SCHOOL CORPORATION, | ) |
| Appellee. | ) |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Jeffrey D. Todd, Judge
Cause No. 27D01-1009-CT-883

**October 31, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Richard Prancik b/n/f Renee Prancik appeals the trial court's grant of summary judgment in favor of Oak Hill United School Corporation ("Oak Hill"). We affirm.

**Issue**

The issue before us is whether Oak Hill was entitled to summary judgment on Prancik's claim that Oak Hill breached a duty to him when a fellow student assaulted him.

**Facts**

The evidence most favorable to Prancik as summary judgment nonmovant is that on November 24, 2009, Prancik was a seventh-grade student at Oak Hill Junior High School. On that day, Prancik went into his classroom during a four-minute passing period. K.M., a fellow student and acquaintance of Prancik, approached Prancik from behind and placed him in a "choke hold" by putting his forearm around Prancik's neck.[1] App. p. 90. As a result, Prancik lost consciousness and fell to the floor, causing facial injuries. During this time the classroom teacher, Rita Nolan, was standing in the hallway outside the classroom, in accordance with a school policy requiring teachers to supervise hallways during passing periods as long as there were more students in the hallways than in the classrooms. Nolan did not witness the incident, although she could have positioned herself in the hallway so that she could see at least some, though not all, of the classroom at the same time she was observing the hallway. K.M. had no school record of any

---

[1] It is not clear that K.M. was intending to be malicious, as opposed to engaging in horseplay.

2

previous violent behavior, nor had he and Prancik previously had conflicts. K.M.'s only disciplinary history was related to use of profanity and not doing homework.

On September 29, 2010, Prancik sued Oak Hill, alleging it had been negligent in supervising its students, leading to K.M.'s injuring of him. Oak Hill moved for summary judgment. On November 16, 2012, the trial court denied Oak Hill's motion. Oak Hill filed a petition to certify this order for interlocutory appeal. At a hearing on that petition, Oak Hill alternatively requested that the trial court reconsider its earlier ruling, citing additional legal authority it had discovered. On February 12, 2013, the trial court reversed its earlier ruling and granted summary judgment to Oak Hill. Prancik now appeals.

**Analysis**

We review a trial court's summary judgment ruling de novo. Miller v. Dobbs, 991 N.E.2d 562, 564 (Ind. 2013). We will affirm a grant of summary judgment "'only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Overton v. Grillo, 896 N.E.2d 499, 502 (Ind. 2008)); see also Ind. Trial Rule 56(C). We must construe all evidence and resolve all doubts in favor of the non-moving party, so as to avoid improperly denying that party's day in court. Id. Under Indiana Trial Rule 56(C), a summary judgment movant must make a prima facie showing that there are no genuine issues of material fact that it is entitled to judgment as a matter of law. Wabash County Young Men's Christian Ass'n, Inc. v. Thompson, 975 N.E.2d 362, 365 (Ind. Ct. App. 2012), trans. denied. If this

occurs, the burden shifts to the nonmoving party to designate evidence establishing the existence of a genuine issue of material fact. Id.

To prevail on a negligence claim, a plaintiff must prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach. Id. Summary judgment is rarely appropriate in negligence cases. Id. "Nevertheless, a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim." Id. In particular, although the question of breach of duty is usually one for a trier of fact, the question becomes one of law for the court if no reasonable fact finder could conclude that a specific standard of care was breached. Cox v. Paul, 828 N.E.2d 907, 911-12 (Ind. 2005).

Our focus in this case is whether there are any genuine issues of material fact that could possibly establish a breach of duty on Oak Hill's part towards Prancik. There are a number of cases addressing the nature and scope of a school's duty to prevent children from coming to harm while in the school's care and custody and the quantum of proof necessary to establish a possible breach of that duty. Our supreme court addressed the issue at length in Miller v. Griesel, 261 Ind. 604, 308 N.E.2d 701 (1974). In that case, a fifth grader was injured by an exploding detonator cap brought to school by another student while several students were alone in a classroom during a half-hour recess period. In accordance with school policy, the teacher was absent from the classroom at the time, although another teacher was periodically checking in on the students during the recess

4

period. The student sued the teacher, principal, and school, the case proceeded to trial, and the trial court granted the defendants' motion for judgment on the evidence under Trial Rule 50 at the end of the plaintiff's case. Our supreme court affirmed.

First, the court held that school authorities have a duty "to exercise reasonable care and supervision for the safety of the children under their control." Miller, 261 Ind. at 611, 308 N.E.2d at 706. As for the scope of that duty, the court stated:

> [S]chools are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them. The duty imposed by this legal relationship is a practical recognition by the law that school officials are required to exercise due care in the supervision of their pupils; that while they are neither an insurer of safety nor are they immune from liability. It is not a harsh burden to require school authorities in some instances to anticipate and guard against conduct of children by which they may harm themselves or others.

Id. at 612, 308 N.E.2d at 706-07.

Applying that standard to the facts of the case, the court concluded that the trial court properly granted the motion for judgment on the evidence because there was a total absence of evidence that the defendants had breached their duty to the injured student. Id. at 612-13, 308 N.E.2d at 707. The court noted that the plaintiff had "failed to show the actual length of time the students were left unattended or that the activity in which they were engaged was particularly hazardous or that any of the students in the room were of a troublesome, mischievous nature . . . ." Id. at 613, 308 N.E.2d at 707. It also observed:

5

> [W]hat constitutes due care and adequate supervision depends largely upon the circumstances surrounding the incident such as the number and age of the students left in the classroom, the activity in which they were engaged, the duration of the period in which they were left without supervision, the case of providing some alternative means of supervision and the extent to which the school board has provided and implemented guidelines and resources to insure adequate supervision.

Id.

In Norman v. Turkey Run Community School Corporation, 274 Ind. 310, 411 N.E.2d 614 (1980), two elementary school students were injured on a playground during recess when they accidentally ran into each other while running backwards. At the time of the incident, approximately seven or eight teachers were watching 188 children on the playground, and there were "no abnormal, dangerous or extra-hazardous conditions present prior to the collision." Norman, 274 Ind. at 314, 411 N.E.2d at 616. Our supreme court affirmed a grant of summary judgment in favor of the school in a lawsuit brought by one of the injured children. The court stated, "No teacher can observe every student at every instant on a playground. To look at one is to look away from another." Id. at 316, 411 N.E.2d at 617. It also noted, "there was no indication that there was any event [sic] dangerous condition, dangerous instrumentality or special knowledge of students having a troublesome or mischievous nature being on the playground area known to the supervising teachers at the recess." Id. at 317, 411 N.E.2d at 618. Under these circumstances, the court held that "school personnel here clearly exercised ordinary and reasonable care for the safety of the children under their authority." Id.

6

The case whose facts are most similar to the present case is <u>McClyde v. Archdiocese of Indianapolis</u>, 752 N.E.2d 229 (Ind. Ct. App. 2001). There, a student was assaulted and injured by a fellow student in a classroom as they were returning from lunch. The teacher was following the class back to the room, but she was not yet in the room at the beginning of the assault and was unable to stop it when she arrived. We held that in order to hold the school liable for the assault and resulting injuries, the injured student would be required to prove: (1) the assaulting student had a propensity towards violence; (2) the school system or teacher was aware of this propensity; (3) the teacher failed to adequately supervise the class; and (4) this failure allowed the opportunity for the assault to occur, proximately resulting in injuries to the assaulted student. <u>McClyde</u>, 752 N.E.2d at 233. Because there was an unstricken affidavit from the injured student's mother, who was also a school employee, relating that the assaulting student was known to have behavioral and "anger management" problems, that he had earlier on the day of the assault verbally challenged her son, and that the teacher's being at the end of the line returning from lunch had allowed the assault to occur, we held there was sufficient evidence to proceed to trial and reversed the trial court's grant of summary judgment in favor of the school. <u>Id.</u> at 234. It appears that in the absence of that affidavit, we would have affirmed the trial court's grant of summary judgment. <u>See</u> <u>id.</u> at 235.

<u>Miller</u>, <u>Norman</u>, and <u>McClyde</u> all demonstrate that Indiana courts will not shy away from holding as a matter of law that a school did not breach its duty to reasonably

supervise the children in their care and control where the facts warrant such a holding.[2] Here, there is no evidence that either Oak Hill or Nolan was aware of any violent tendencies on K.M.'s part and, thus, they were not on any kind of notice that K.M. needed to be closely watched to prevent aggressive or violent behavior by him. There was no evidence of prior altercations between K.M. and Prancik. There also is no evidence that the school's policy of having teachers focus their attention on hallways during passing periods instead of classrooms, so long as more students were in the hallways than in the classrooms, had previously resulted in physical altercations in the classrooms. Particularly in the absence of such evidence, that policy of focusing attention on where the greater number of students are located is eminently reasonable. The amount of time that Prancik and K.M. would have been left unobserved in the classroom would have been a matter of a few minutes; no more than four, the total amount of the passing period, and likely less than that, as Nolan would have refocused her attention on the classroom once more students arrived.

Prancik posits that Nolan theoretically could have positioned herself so that she could have looked back and forth between the hallway and the classroom and therefore

---

[2] There is language in both Norman and McClyde that seems to blur the line between duty and breach of duty, and neither case was very clear as to whether they were addressing duty or breach of duty. However, it is apparent to us that those cases addressed whether the facts were sufficient to establish a possible breach of a school's well-settled duty to reasonably supervise its students, not whether a duty existed. Our supreme court has held that "because a school's duty to its students already has been established," courts should not attempt to rearticulate that duty based upon a given set of facts "because to do so presupposes that an issue which is thought to be settled must be revisited each time a party frames the duty issue a little differently." Mangold ex rel. Mangold v. Indiana Dep't of Natural Res., 756 N.E.2d 970, 974-75 (Ind. 2001). Instead, courts in cases such as this should focus upon "whether a given set of facts represents a breach of that duty." Id. at 975.

could have noticed and intervened in K.M.'s behavior. Regardless, it is almost always possible to speculate that something more could have been done in situations like this. Such speculation is insufficient to avoid summary judgment. See Norman, 274 Ind. at 317, 411 N.E.2d at 618. The fact remains that Nolan has only one pair of eyes; contrary to the belief of many generations of students, teachers do not in fact have eyes in the back of their heads. She was acting reasonably in focusing her attention on the hallway rather than the classroom at the moment the assault occurred. Moreover, schools are not required to constantly observe all students at all times, nor to guarantee that incidents such as the one here never happen, in order to discharge their duty of adequate supervision.

Prancik also argues that reversal here is warranted by our supreme court's decision in King v. Northeast Security, Inc. and Metropolitan School District of Washington Township, 790 N.E.2d 474 (Ind. 2003). In King, a high school contracted with a private security firm to provide security at the school, including in the parking lot before and after school, after several criminal incidents at the school in the previous two years. In addition to the security firm, the school's assistant principal normally stayed outside the school building after classes were dismissed to personally monitor the students' departure. One day, however, the assistant principal was absent and no other school official replaced him in watching the students' departure; on that particular day a student was assaulted and beaten in the parking lot at the end of the school day. The injured

9

student subsequently sued the school and the security firm, and the trial court granted summary judgment in favor of both the school and the security firm.

Our supreme court reversed summary judgment as to both. King, 790 N.E.2d at 487. The majority of the opinion addressed whether the school enjoyed immunity from the student's claims under the Indiana Torts Claim Act, with the court holding that it did not. Id. at 484. The opinion also addressed at length whether the security firm owed a duty to the student, with the court holding that it did. Id. at 487. In addition to these two lengthy discussions, the court also briefly addressed whether, for summary judgment purposes, there was sufficient evidence that the school did not exercise reasonable care in its supervision of students. Id. at 484-85. The school claimed that it adequately fulfilled its supervision responsibilities by contracting with the security firm, but the court rejected this claim by noting, "whether merely entering a contract is all the [school] should have done or was required to do in discharging its duty of care and supervision for the safety of its students is a matter for the jury to decide . . . ." Id. at 485. The court also noted the absence of the assistant principal who usually watched students leaving at the end of school and the failure to replace him on that day. Id. The court did not engage in discussion of how this case differed from ones such as Miller, Norman, or McClyde, nor did it express any disapproval of them, but it ultimately held the school did not meet its summary judgment burden of establishing as a matter of law that it had adequately supervised its students. Id.

10

We conclude <u>King</u> does not compel reversal of summary judgment in favor of Oak Hill. The primary argument of the school in <u>King</u> was that its contract with a private security firm was enough to discharge its supervisory responsibilities. That is not a consideration at all in the present case, as Oak Hill has not attempted to delegate its supervisory responsibilities to a third party. Also, there was evidence that the school in <u>King</u> was not following its own supervisory protocols at the time of the assault, due to the absence of the assistant principal and the failure to find a replacement for him to watch the departing students. Here, Nolan was acting in accordance with reasonable protocol for supervising students at the time of the incident, neither she nor the school were on any kind of notice that K.M. could be violent, either generally or towards Prancik specifically, and he and Prancik were left unsupervised at most for a mere matter of minutes. These undisputed facts lead us to the conclusion that as a matter of law, Oak Hill did not breach its duty to reasonably supervise the students in its care.[3]

## Conclusion

There are no genuine issues of material fact in this case, and Oak Hill is entitled to judgment as a matter of law. We affirm the granting of summary judgment in Oak Hill's favor.

Affirmed.

CRONE, J., and PYLE, J., concur.

---

[3] Having reached this conclusion, we need not address Oak Hill's alternative argument that even if it breached its duty to Prancik, K.M.'s conduct was an intervening or superseding cause of Prancik's injury.

11