

Jun 30 2015, 8:19 am

CLERK
of the supreme court,
court of appeals and
tax court

Swaray Edward Conteh
The Law Office of Swaray Conteh, LLC
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEES**

Craig M. Borowski
Rozlyn M. Fulgoni-Britton
Faegre Baker Daniels LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tikidanke Bah,

*Appellant-Plaintiff,*

v.

Mac's Convenience Stores, LLC
d/b/a Circle K and David
Ruffin,

*Appellees-Defendants*

June 30, 2015

Court of Appeals Case No.
49A02-1407-CT-512

Appeal from the Marion Circuit
Court

The Honorable Louis Rosenberg,
Judge

Case No. 49C01-1004-CT-16980

**Crone, Judge.**

## Case Summary

Tikidanke Bah was a store manager for Mac's Convenience Stores, LLC d/b/a Circle K ("Circle K"). Bah's supervisor, David Ruffin, suspected that she had stolen money from the store, which she denied. Ruffin terminated Bah's

employment and contacted the police. The prosecutor charged Bah with theft. After a trial, the jury found her not guilty.

[2] Bah filed a complaint against Circle K and Ruffin (collectively "Appellees") asserting eight counts: false imprisonment, two counts of defamation, malicious prosecution, negligent supervision, vicarious liability, intentional infliction of emotional distress, and negligent infliction of emotional distress. Appellees filed a motion for summary judgment as to all eight counts as well as a motion to strike certain evidence designated by Bah.

[3] The trial court granted Appellees' motion to strike and motion for summary judgment. Bah filed a motion to correct error asserting that the trial court erred in granting the motion to strike and the motion for summary judgment. The trial court denied Bah's motion to correct error.

[4] On appeal, Bah first contends that the trial court erred in granting Appellees' motion to strike on procedural and substantive grounds. We conclude that Bah has waived these arguments because she failed to object on either basis and in fact consented to the procedure.

[5] Bah also contends that the trial court erred in granting Appellees' summary judgment motion. Bah has withdrawn her negligent supervision claim, and we conclude that her negligent infliction of emotional distress claim fails as a matter of law; therefore, we affirm the trial court's grant of summary judgment in Appellees' favor on those claims. We also affirm the trial court's grant of summary judgment on Bah's malicious prosecution claim. But we conclude

that Appellees are not entitled to summary judgment on Bah's remaining claims based on defenses requiring state-of-mind and credibility determinations. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

[6] The relevant facts most favorable to Bah as the nonmoving party on summary judgment are as follows. In 2006, Bah started working for Circle K as a cashier. In 2007, she was promoted to manager of a store at 82nd Street and Allisonville Road in Indianapolis. Bah reported to Ruffin, the market manager. In 2008, over Bah's objection, Ruffin transferred her to a smaller store at 86th Street and Ditch Road.

[7] In June 2008, Ruffin received a job performance evaluation from Circle K stating that he needed "significant improvement" in implementing "loss prevention techniques." Appellant's App. at 126. Around the beginning of September 2008, Ruffin asked Bah if she would resign because he thought that Circle K was going to close her store. Bah said that she would prefer to assist other managers with their stores. Ruffin said that Bah "should instead resign and that the option [she] proposed was not viable." *Id*. at 108 (Bah's affidavit).

[8] At that time, Bah was having problems with some of her employees "error correcting cigarettes" and, she believed, "stealing money." *Id*. Bah informed Ruffin and asked him to come to her store. Ruffin refused. Since Bah "needed

immediate action and [Ruffin] was not helping, [she] bypassed him and contacted [Ruffin's] boss" on September 12, 2008. *Id*.

[9] Ruffin received weekly sales reports from the stores that he managed and reviewed them for financial "irregularities that required investigation." Appellees' App. at 4 (Ruffin's affidavit). In mid-September 2008, Ruffin "noticed a negative number for grocery/C-store sales" in a report from Bah's store, which was "very unusual." *Id*. He also "found that refunds totaling $1,500 were issued" at Bah's store on September 12. *Id*.

[10] On September 18, Ruffin went to Bah's store to investigate, but she was not there. He looked for various "store financial reports" for September 12 but was unable to locate them, which he found "odd." *Id*.[1] Ruffin used the store's cash register to print the cashier's report from September 12. "Each store employee who has access to the cash register and store funds has a unique cashier number that they [sic] are not to share with others." *Id*. at 5. Sometimes, however, Bah "would give her code to the cashiers" to allow them to unlock the register if she was unavailable. Appellant's App. at 109 (Bah's affidavit). Ruffin also "had the codes for everyone in the store." *Id*. The cashier's report indicated that Bah's

> cashier number was used to enter a total of $1,500.00 in refunds for
> non-tax grocery items on September 12, 2008, between 5:53 a.m. and

---

[1] According to Ruffin, Bah said that she had "accidently [sic] thrown all of these reports away while cleaning." Appellees' App. at 6 (Ruffin's affidavit). According to Bah, this claim is "completely false." Appellant's App. at 109 (Bah's affidavit).

> 6:07 a.m., and [Bah] was one of the employees on duty at this time. There was no grocery item for sale in the store at the time that cost $1,500.00. The majority of the items for sale in the store are grocery items, drinks, food items, and other miscellaneous goods that are far less expensive.

Appellees' App. at 5 (Ruffin's affidavit).

The store's cash register never had $1500 in it. *Id*. at 22 (Bah's deposition). Refunding that amount would require opening the safe, and Bah was the only store-level employee with a key to the safe. *Id*. Ruffin also had a key. *Id*. Ruffin reviewed the store's bank deposit slip from September 12, which was for $2047. According to Ruffin, this was "a much smaller amount than the store's average deposits." *Id*. at 5 (Ruffin's affidavit). According to Bah, this amount was "normal" for the store. Appellant's App. at 109 (Bah's affidavit). Notably, the designated evidence does not indicate that Ruffin (or anyone else) determined that $1500 had actually been taken from the store's safe.

Ruffin also reviewed "recorded footage from security video cameras that were positioned around the store." Appellees' App. at 4. He discovered a ten-minute period "when the camera was not recording," due to either a power surge or someone pressing "the camera's reset button, which is located in the store office." *Id*. at 5. "The camera footage showed that [Bah] had entered the office immediately before the camera stopped recording." *Id*.[2]

---

[2] Bah mentioned this footage in her deposition. Appellees' App. at 21. Neither Ruffin's affidavit nor Bah's deposition specifies the date of the footage, but we presume from the context that it was recorded on September 12.

[13] Ruffin met with Bah and asked her "whether she knew why the grocery/C-store sales results were negative, and she said no." *Id.* at 6. He also asked her "about the $1,500.00 in refunds that were done using her cashier number, and she denied any involvement in the refunds." *Id.* Ruffin terminated Bah's employment.

[14] "It is Circle K's practice when discovering suspected theft of this level from its stores to report the suspected theft to the police." *Id.* Ruffin contacted the Indianapolis Metropolitan Police Department ("IMPD") and told them what he had found during his investigation. Ruffin was later "contacted by IMPD and the prosecutor and asked for additional information." *Id.* He "cooperated with the IMPD and prosecutor's office and answered their questions and requests for information[.]" *Id.*

[15] The prosecutor charged Bah with theft. She received a warrant in the mail instructing her to report to the City-County Building for a mug shot and fingerprinting, which she did. She was not arrested or jailed pending trial. In March 2010, a jury found her not guilty of theft.

[16] In April 2010, Bah filed a complaint against Appellees asserting eight counts: false imprisonment, two counts of defamation (slander per se and slander per

quod),[3] malicious prosecution, negligent supervision, vicarious liability/respondeat superior, intentional infliction of emotional distress, and negligent infliction of emotional distress. Bah's complaint contains the following allegations:

> 8. Slightly more than two (2) months after Plaintiff began managing the Ditch Road Store, [Ruffin] falsely accused Plaintiff of stealing $1500 from the Ditch Road Store sales for September 11, 2008. Ruffin informed individuals with the corporate office of Circle K and others not associated with management of Circle K and others not associated with Circle K that Plaintiff stole money from the company.

> 9. On September 18, 2008, Ruffin reported to Officer Raymond Robinson, Jr. of the Indianapolis Metropolitan Police Department (IMPD) that on September 12, 2008, Plaintiff turned off an in-store security camera for approximately thirteen (13) minutes and stole money from the store. Around the same [sic] Ruffin also told detective Janice Aikman of IMPD that Plaintiff rebooted the security camera system and logged into the registers and performed three (3) refunds totaling $1500 and then took the money from the company safe for personal use. Ruffin further falsely insinuated to others, including the Marion County Prosecutor and his deputies that Plaintiff took the money to spend on a 7-day vacation.

Appellant's App. at 9-10.

---

[3] "Defamation is that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999), *trans. denied* (2000). "To establish defamation, the plaintiff must prove the following elements: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages." *Id*. An action for defamation per se "arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct." *Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 186 (Ind. 2010). "In contrast, if the words used are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence, they are considered defamatory *per quod*." *Id*.

[17] Appellees filed a motion for summary judgment as to all eight counts in which they set forth numerous "undisputed material facts," including details from Ruffin's affidavit regarding his investigation of the "suspected theft" and that he reported his findings to IMPD. *Id*. at 18, 20. Appellees also stated,

> The basis for Bah's false imprisonment, malicious prosecution, intentional infliction of emotional distress, negligence, and, in part defamation claims is Ruffin's communications with IMPD regarding the $1,500 loss at Bah's store. However, a person's communications with police in reporting a suspected crime are qualifiedly privileged so long as the person has a belief or grounds for belief in the truth of his report. Bah has no evidence to suggest that a police report was made without belief in its truth, and Ruffin's testimony proves his well-founded belief in the truth of his report and that the report was consistent with Circle K policy and practice.

*Id*. at 21-22.

[18] In her response to Appellees' summary judgment motion, Bah stated,

> On September 18, 2008, Ruffin as agent of Circle K contacted IMPD and reported that on September 12, 2008, Bah stole the sum of $1500 from the store she was managing and thereafter sought Bah's prosecution for theft. Before contacting the police, Ruffin spread this lie to other Circle K employees including one Rodney Blanton, Steve Ryan, Alhassan Seick, Brenda Anderson and Sidi Ndiaye. Aff[idavit] of Bah, ¶ 7. Defendants' motion focused entirely on Ruffin's publications to the police. This response will therefore not address publications made to others who are not law enforcement.

*Id*. at 43. In alleging what Ruffin told IMPD, Bah relied on a police report and the probable cause affidavit filed in her criminal case. In their reply to Bah's response, Appellees argued, "To the extent [Bah] tries to avoid summary judgment based on [communications to persons outside IMPD], the Court should disregard this attempt because the argument is entirely undeveloped and

the alleged communications are not supported by admissible evidence." *Id*. at 66.

[19] The trial court held a hearing on Appellees' summary judgment motion. At the beginning of the hearing, the court told the parties, "It would be helpful to me if you could file a Motion to Strike that would cover all of the […] items of designated evidence that you think are […] of questionable admissibility[.]" Tr. at 4.[4] At the conclusion of the hearing, the trial court said that it would accept responses to the motions to strike. *Id*. at 45. Bah's counsel stated that he had "[n]o problem" with this arrangement. *Id*.

[20] Appellees filed a motion to strike certain evidence designated by Bah, including paragraph 7 of her affidavit, the police report, and the probable cause affidavit, based on inadmissible hearsay and/or lack of personal knowledge. Without paragraph 7 of Bah's affidavit, there is no designated evidence establishing that Ruffin made allegedly defamatory statements to anyone other than law enforcement authorities. Bah did not respond or object to Appellees' motion and did not file her own motion.

[21] In June 2014, the trial court issued an order granting Appellees' motion to strike that reads in relevant part:

---

[4] Bah has included a portion of the transcript in her appendix in violation of Indiana Appellate Rule 50(F), which states, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix."

> The following submissions in [Bah's] Designation of Evidence in Opposition to [Appellees'] Motion for Summary Judgment and all argument [Bah] has made in reliance thereon are stricken from the record: (1) all hearsay, speculation, statements contradicting prior sworn deposition testimony, statements lacking personal knowledge, and other inadmissible portions of Exhibit 1 [Bah's affidavit], (2) Exhibit 7 [police report], and (3) Exhibit 8 [probable cause affidavit].

Appellant's App. at 78. The trial court also issued an order granting Appellees' summary judgment motion.

[22] Bah filed a motion to correct error asserting that the trial court erred in granting Appellees' motion to strike on procedural and substantive grounds and also erred in granting Appellees' summary judgment motion. In July 2014, the trial court issued an order denying Bah's motion to correct error that reads in pertinent part:

> At oral argument, the Court requested Motions to Strike from all parties so evidentiary issues could be further explored and briefed. The Court has discretion to invite further briefing and properly exercised that discretion here.
>
> …. [Bah] did not file her own Motion to Strike. [Bah] also did not respond to [Appellees'] Motion to Strike, thus waiving the substantive and procedural arguments she now attempts to make in her Motion to Correct Errors relating to [Appellees'] Motion to Strike. Moreover, the Court's order granting [Appellees'] unopposed Motion to Strike was procedurally and substantively correct for all the reasons set forth in [Appellees'] Motion to Strike and Memorandum in Support of the same. This Court's Order … granting [Appellees'] Motion to Strike was not in error.
>
> Further, the Court's order granting [Appellees'] Motion for Summary Judgment was not in error. Even when considering inadmissible evidence submitted by [Bah], [Appellees'] Motion for Summary Judgment was properly granted for all the reasons set forth in

[Appellees'] Motion for Summary Judgment, Brief in Support of Motion for Summary Judgment, and Reply in Support of Motion for Summary Judgment. There is no basis to disturb the Court's entry of summary judgment in favor of [Appellees].

*Id*. at 6-7. Bah now appeals.

# Discussion and Decision

## Section 1 – Bah has waived her arguments regarding Appellees' motion to strike.

Bah first contends that the trial court erred in granting Appellees' motion to strike on both procedural and substantive grounds. As did the trial court, we conclude that Bah has waived these arguments because she failed to object on either basis, and in fact she specifically consented to the procedure. *See Yater v. Hancock Cnty. Bd. of Health*, 677 N.E.2d 526, 530 (Ind. Ct. App. 1997) (finding issue waived where party raised it for first time in motion to correct error); *see also Bunting v. State*, 854 N.E.2d 921, 924 (Ind. Ct. App. 2006) ("A party may not sit idly by, permit the court to act in a claimed erroneous manner, and subsequently attempt to take advantage of the alleged error."), *trans. denied*; *Olcott Int'l & Co. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1077 (Ind. Ct. App. 2003) ("A party cannot invite error and then request relief on appeal based upon that ground; such an error cannot be reviewed by this court."), *trans. denied*.

## Section 2 – Summary Judgment/Standard of Review

Bah also contends that the trial court erred in granting Appellees' summary judgment motion. We review such rulings de novo. *Prancik v. Oak Hill United*

*Sch. Corp.*, 997 N.E.2d 401, 403 (Ind. Ct. App. 2013), *trans. denied* (2014). Pursuant to Indiana Trial Rule 56(C), a summary judgment movant must make a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* If the movant satisfies this burden, "the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial." *Morris v. Crain*, 969 N.E.2d 119, 124 (Ind. Ct. App. 2012). "A 'genuine issue' is one upon which the parties proffer differing accounts of the truth, or as to which conflicting inferences may be drawn from the parties' consistent accounts; a 'material fact' is one that affects the outcome of the case." *Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 259 (Ind. 2014). "We must construe all evidence and resolve all doubts in favor of the non-moving party, so as to avoid improperly denying that party's day in court." *Prancik*, 997 N.E.2d at 401. Summary judgment is not a summary trial, and it is inappropriate merely because the nonmoving party appears unlikely to prevail at trial. *Hughley v. State*, 15 N.E.3d 1000, 1003-04 (Ind. 2014). "The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred. Our review of a summary judgment motion is limited to those materials designated to the trial court." *City of Bloomington v. Underwood*, 995 N.E.2d 640, 644 (Ind. Ct. App. 2013) (citation omitted), *trans. denied* (2014). "An appellate court may affirm summary judgment if it is proper on any basis shown in the record." *Weist v. Dawn*, 2 N.E.3d 65, 67 (Ind. Ct. App. 2014).

## Section 2.1 – Bah has withdrawn her negligent supervision claim, and her negligent infliction of emotional distress claim fails as a matter of law.

At the outset, we note that Bah has withdrawn her claim for negligent supervision. Appellant's Br. at 31. And we also conclude that her claim for negligent infliction of emotional distress fails as a matter of law because she has never alleged, let alone established, a genuine issue of material fact regarding, the "direct physical impact" required by applicable Indiana precedent. *Lachenman v. Stice*, 838 N.E.2d 451, 460 (Ind. Ct. App. 2005), *trans. denied* (2006). Therefore, we affirm the trial court's grant of summary judgment in Appellees' favor on those claims.

## Section 2.2 – Appellees are entitled to summary judgment on Bah's malicious prosecution claim.

In a malicious prosecution claim, the plaintiff must establish that "(1) the defendant … instituted or caused to be instituted an action against the plaintiff …; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). Here, Appellees did not institute or cause to be instituted the criminal action against Bah; the prosecutor did. *See Conwell v. Beatty*, 667 N.E.2d 768, 778 (Ind. Ct. App. 1996) ("[N]one of the Big R defendants instituted or caused to be instituted a prosecution against Conwell [for allegedly switching a price tag on an item that he purchased at a Big R store]. The

prosecution was instituted by the prosecutor who made an independent determination of whether to pursue criminal charges after reviewing all of the information obtained by the Sheriff's Department's independent investigation."). Therefore, we affirm the trial court's grant of summary judgment in Appellees' favor on Bah's malicious prosecution claim.

## Section 2.3 – Appellees are not entitled to summary judgment on Bah's remaining claims based on defenses requiring state-of-mind and credibility determinations.

[27] With respect to Bah's remaining claims, Appellees make the following argument:

> Bah bases her entire case on alleged communications Ruffin made to IMPD[5] regarding the $1,500.00 in refunds that were issued in Bah's store with Bah's cashier code while Bah was working. But these communications are qualifiedly privileged, and Bah provides no evidence that any circumstances exist to overcome the privilege. For this reason, Bah's false imprisonment, malicious prosecution, intentional infliction of emotional distress, negligence [i.e., vicarious liability/respondeat superior], and defamation claims fail as a matter of law.

Appellees' Br. at 12.

[28] Our supreme court has explained that

> [a] qualified privilege applies to communications made in good faith on any subject matter in which the party making the communication

---

[5] As indicated above, without paragraph 7 of Bah's affidavit, which was stricken by the trial court, there is no designated evidence establishing that Ruffin made allegedly defamatory statements to anyone other than law enforcement authorities. Consequently, we limit our discussion to Ruffin's statements to IMPD.

has an interest or in reference to which he had a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty. As a defense to defamation, the qualified privilege operates not to change the actionable quality of the words published, but merely to rebut the inference of malice that is otherwise imputed. To merit its protection, the burden is upon the defendant in the first instance to establish the existence of a privileged occasion for the publication, by proof of a recognized public or private interest which would justify the utterance of the words. Then the plaintiff has the burden of overcoming that privilege by showing that it has been abused. When speaking of abuse, the essence of the concept is not the speaker's spite but his abuse of the privileged occasion by going beyond the scope of the purposes for which privilege exists. And unless only one conclusion can be drawn from the evidence, the question of whether the privilege has been abused is for the jury.

*Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009) (citations, quotation marks, and alterations omitted).

As in *Williams*, the privileged occasion implicated in this case relates to the public interest in encouraging private citizens to report crime. *Id.* "The chief benefit is investigation of suspected criminal activity." *Id.* "[A] reporting citizen may, out of an excess of caution or even for a nefarious purpose, make false accusations, and our citizens' equally valid interest in having reputations untarnished by false imputations of criminal misconduct has been a cornerstone of defamation law for hundreds of years." *Id.* at 763.

> Because of the compelling public interest in encouraging citizens to report suspected wrongdoing, however, the law recognizes a limited defense to civil liability premised on erroneous reports of criminal conduct to police: "[I]t is well established that in Indiana, communications made to law enforcement to report criminal activity are qualifiedly privileged." *Kelley* [*v. Tanoos*, 865 N.E.2d 593, 600 (Ind. 2007)].... But the privilege is not without limits: a statement "may lose its privileged character upon a showing of abuse wherein:

(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Bals* [*v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992)].

*Id*. at 763-64. The qualified privilege defense to defamation has also been applied to claims of false imprisonment, negligence, and intentional infliction of emotional distress. *Brown v. Indianapolis Housing Agency*, 971 N.E.2d 181, 186 (Ind. Ct. App. 2012).

[31] Bah asserts that Ruffin was primarily motivated by ill will in making his statements to IMPD and that he "strung a web of lies to implicate [her] in criminal conduct." Appellant's Br. at 19. Appellees contend that "Bah's beliefs are not factual support appropriate in defending summary judgment, and they all must be disregarded." Appellees' Br. at 14. It is well settled, however, that "[s]ummary judgment must be denied if the resolution hinges upon state of mind, credibility of the witnesses, or the weight of the testimony." *Nelson v. Jimison*, 634 N.E.2d 509, 512 (Ind. Ct. App. 1994).

[32] Bah and Ruffin had a contentious relationship; he transferred her to a smaller store over her objection, and she refused his request to resign. On September 12, 2008, shortly after Ruffin received a negative evaluation for loss prevention techniques, Bah went over his head to report her concerns that her employees were stealing money. Bah's employees and Ruffin had Bah's cashier number, which was used on September 12, 2008, to enter the $1500 in refunds that formed the basis of the theft charge against Bah. The store's cash register never had $1500 in it, and only Bah and Ruffin had keys to the safe. According to

Ruffin, that day's bank deposit slip was for a "much smaller" than average amount. Appellees' App. at 5. According to Bah, the amount was "normal." Appellant's App. at 109. No evidence has been designated that Ruffin (or anyone else) determined that $1500 was actually stolen from the safe, and Bah was ultimately acquitted of the theft charge. Viewing the designated evidence and resolving all doubts in favor of Bah as the nonmoving party, as we must, we conclude that a jury must determine whether Ruffin was primarily motivated by ill will in accusing Bah of the alleged theft, whether his accusations were made without belief or grounds for belief in their truth, or whether he made those accusations in good faith. In other words, we conclude that Appellees are not entitled to summary judgment on Bah's remaining claims based on the qualified privilege defense.[6]

[33] For the same reason, we reject Appellees' argument that they are entitled to summary judgment on Bah's false imprisonment claim based on the judicial determination that probable cause existed to charge her with theft. *See Street v. Shoe Carnival, Inc.*, 660 N.E.2d 1054, 1057-58 (Ind. Ct. App. 1996) (probable cause determination in criminal proceeding may constitute prima facie evidence of probable cause in subsequent action for false imprisonment, but "prima facie case may be rebutted by evidence that shows the finding of probable cause was

---

[6] Appellees assert that to evaluate Bah's claim that Ruffin was untruthful in reporting her alleged theft to IMPD, we "must determine what communications [he] made that are supported by designated evidence," and the only evidence regarding what he told IMPD was properly stricken by the trial court. Appellees' Br. at 14. But Ruffin's affidavit, which was not stricken by the trial court, spells out the substance of what he told IMPD in reporting Bah's alleged theft.

induced by *false testimony or fraud*"; holding that genuine issue of material fact existed regarding whether defendants had probable cause to believe that plaintiffs committed or attempted to commit theft) (emphasis added). We likewise reject Appellees' argument that they are entitled to summary judgment on Bah's false imprisonment claim based on statutory immunity for store owners and agents. *Cf.* Ind. Code § 35-33-6-2(a) ("An owner or agent of a store who has probable cause to believe that a theft has occurred or is occurring on or about the store and who has probable cause to believe that a specific person has committed or is committing the theft … may … inform the appropriate law enforcement officers[.]"); Ind. Code § 35-33-6-4 ("A civil or criminal action against … an owner or agent of a store … may not be based on a detention that was lawful under section 2 … of this chapter. *However, the defendant has the burden of proof that the defendant acted with probable cause under section 2 … of this chapter.*") (emphasis added).[7] In sum, Bah's false imprisonment claim hinges on a credibility determination, and therefore Appellees are not entitled to summary judgment on that claim. *Nelson*, 634 N.E.2d at 512.

[34] Finally, we address the parties' arguments regarding Bah's claim for intentional infliction of emotional distress ("IIED"). The elements of that tort are that the defendant "(1) engages in extreme and outrageous conduct (2) which

---

[7] All that being said, we also reject Bah's suggestion that her acquittal conclusively establishes that no probable cause existed to charge her with theft. *See Wells v. Bernitt*, 936 N.E.2d 1242, 1253 (Ind. Ct. App. 2010) ("[T]he amount of evidence necessary to meet the probable cause requirement … is less than the level of proof necessary to establish guilt beyond a reasonable doubt."), *trans. denied* (2011).

intentionally or recklessly (3) causes (4) severe emotional distress to another."
*Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). "It is the intent to harm the plaintiff emotionally which constitutes the basis for the tort of [IIED]." *Lachenman*, 838 N.E.2d at 457. "The requirements to prove this tort are 'rigorous.'" *Curry*, 943 N.E.2d at 361 (quoting *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)).

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Bradley v. Hall*, 720 N.E.2d 747, 753 (Ind. Ct. App. 1999) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). "What constitutes 'extreme and outrageous' conduct depends, in part, upon prevailing cultural norms and values." *Id*. "IIED is found where conduct exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind. In the appropriate case, the question can be decided as a matter of law." *Curry*, 943 N.E.2d at 361 (citation omitted).

[35] Appellees first assert that "[c]onducting an internal investigation, reporting possible theft to the police, and cooperating with police and prosecutors is not

extreme and outrageous conduct." Appellees' Br. at 19. But this argument presupposes that Ruffin had belief or grounds for belief in the truth of his statements to IMPD, and we have already held that this is a matter for jury determination. *Nelson*, 634 N.E.2d at 512.[8]

[36] Next, Appellees argue that "Bah has *not* addressed what evidence supports a finding that Ruffin acted with intent to cause her severe emotional distress when he reported his investigation findings to police." Appellees' Br. at 20. We have already held that Ruffin's state of mind is also a matter for jury determination. *Nelson*, 634 N.E.2d at 512.

[37] Appellees further contend that

> Bah also has no meaningful evidence to show that she actually sustained severe emotional distress. Besides her conclusory testimony that the subject of this lawsuit affected her "very bad" and "really affected" her, Bah has no evidence of severe emotional distress. In fact, Bah continued to work a second job she held while employed with Circle K. Moreover, Bah admits she has not sought any kind of professional treatment for alleged emotional distress.

Appellees' Br. at 21 (citation to appendix omitted).

[38] The record shows that Appellees have substantially minimized the alleged severity of Bah's emotional distress. In her affidavit, she averred the following:

---

[8] We note that Appellees do not argue that making a false police report can never be considered extreme or outrageous conduct as a matter of law. *Cf. Williams v. Tharp*, 889 N.E.2d 870, 880 (Ind. Ct. App. 2008) ("declin[ing] to hold as a matter of law that the filing of a false report can never amount to extreme or outrageous conduct") (citing *Gilman v. Gilman*, 736 A.2d 199 (Conn. Super. Ct. 1999), and *Adams v. Carlisle*, 630 S.E.2d 529 (Ga. Ct. App. 2006), *cert. denied*), *trans. granted on other grounds*, 914 N.E.2d 756 (Ind. 2009).

2. I am a native and citizen of the Republic of Sierra Leone, West Africa. I am the mother of three children. I entered the United States as derivative beneficiary of my ex-husband who was accorded asylum status by the Government of the United States.

….

4. At the time of my arrest in 2008, I was the sole provider for my children.

….

6. At the time I was arrested, I was not a permanent resident of the United States although I was lawfully present in the country and was lawfully employed. In fact, I just now attended an interview to become a permanent resident. My status here was precarious at the time because I was here on the status of my ex-husband as a person granted asylum. I talked to other foreign nationals and immigration attorneys regarding my status after my arrest. I learned that a conviction for any criminal act would adversely impact my ability to become a permanent resident. I found out that if I am convicted for theft, I might be deported and that I will remain in jail until I am deported. I was very scared and terrified to know this.… I totally freaked out when I was falsely accused of stealing $1500 from Circle K.

7. I spent endless nights thinking about the impact of such allegations on my family and[] my children in particular. I was extremely concerned about the possibility of deportation and how that would affect my children because at the time I was solely responsible for my children. Although I did not consult with psychologist or psychiatrist,[9] I secretly battled depression and mental anguish. I was unable to disclose my arrest and the reason for the arrest to my children. It was only when the trial was close that I told my children when they observed serious changes in my attitudes toward them. My

---

[9] In her deposition, Bah testified that she did not seek treatment from doctors "because I don't have money to pay that." Appellees' App. at 24.

social life diminished considerably while the criminal case against me was pending. I suffered in silence for nearly two (2) years until my acquittal on March 9, 2010…. When the case was given to the jury we waited outside the court for a verdict. Waiting for that verdict was suffocating. I felt like dying.

Appellant's App. at 105-06.

[39] At the very least, Bah's affidavit raises a genuine issue of material fact regarding whether Appellees' conduct caused her severe emotional distress. *See Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014) (holding that defendant's "self-serving" affidavit was sufficient "to raise a factual issue to be resolved at trial"). Therefore, we reverse and remand for further proceedings on her IIED claim and the foregoing claims already discussed.

# Conclusion

[40] We affirm the trial court's grant of summary judgment in Appellees' favor on Bah's claims for negligent supervision, negligent infliction of emotional distress, and malicious prosecution. As to the remaining claims, we reverse and remand for further proceedings.

[41] Affirmed in part, reversed in part, and remanded.

Pyle, J., concurs.

Brown, J., dissents with opinion.

Tikidanke Bah,

*Appellant-Plaintiff*,

v.

Mac's Convenience Stores, LLC d/b/a Circle K and David Ruffin,

*Appellees-Defendants*.

**Brown, Judge, concurring in part and dissenting in part.**

[42] I concur with the majority as to its conclusions in Sections 1, 2.1, and 2.2, but respectfully dissent from its conclusion that the Appellees are not entitled to summary judgment on Bah's remaining claims based on the qualified privilege defense.

[43] If Circle K and Ruffin have demonstrated the absence of any genuine issue of fact as to a determinative issue, they are entitled to summary judgment unless Bah comes forward with contrary evidence showing a triable issue for the trier

of fact. *See Williams v. Tharp*, 914 N.E.2d 756, 761-762 (Ind. 2009). "[T]he trial court's judgment arrives on appeal 'clothed with a presumption of validity,' and the challenging party 'bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law.'" *Id.* at 762 (quoting *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993)).

[44] The designated evidence included Ruffin's affidavit in which he asserted:

> It is Circle K's practice when discovering suspected theft of this level from its stores to report the suspected theft to the police. Consistent with that practice and after consulting my supervision [sic], I contacted the Indianapolis Metropolitan Police Department ("IMPD") and provided truthful information regarding the events and what I had found in the course of my investigation to that point. After that initial report, I was contacted by IMPD and the prosecutor and asked for additional information. In response, I cooperated with the IMPD and prosecutor's office and answered their questions and requests for information with entirely truthful information to the best of my knowledge. I did not take any action involving Ms. Bah with an intent to harm her or with motivations of ill will, and I have never shared false information about Ms. Bah with anyone to my knowledge.

Appellee's Appendix at 6.

[45] Bah cites to her affidavit and asserts that Ruffin informed other Circle K employees about the "lie." Appellant's Brief at 14. However, the Appellees specifically requested that the trial court strike the statement that Ruffin spread the false allegations to others, and the trial court granted the Appellees' motion. **(Appellee's Appendix at 30)** Bah does not point to any designated evidence which had not been stricken to demonstrate what statements she asserts were

improperly made by Ruffin to the police. Therefore, based upon the designated evidence, I would conclude that the qualified privilege applies and would affirm on all issues. *See Williams*, 914 N.E.2d at 769 (finding that whether the defendant's misperception was speculative, negligent, or even reckless, it was not so obviously mistaken to permit a reasonable inference that he lied, and holding that the trial court did not err in finding a qualified privilege was established as a matter of law and thereby precluding the plaintiffs' claim for defamation); *Kelley v. Tanoos*, 865 N.E.2d 593, 602 (Ind. 2007) (holding that summary judgment in favor of the defendant was appropriate because the plaintiff failed to designate evidence that demonstrates that the defendant abused the qualified privilege).

[46] For the foregoing reasons, I respectfully dissent in part and would affirm the trial court in all respects.